(Decided July 13th, 1860.)

---

# WILLIAM T. HALL and THOS. D. LONEY vs. JAS. A. RICHARDSON.

An order of court directing property attached to be sold, and the sheriff to "hold the proceeds subject to the ultimate decision of the cause," does not prevent a claimant from appearing in the attachment case and asserting title to the *property*.

Payment over, by order of court, of the proceeds of sale to the plaintiff, on his giving bond to indemnify the defendants, and *all other persons*, in case the suit should be decided against him, does not change the nature of the fund, nor prevent a claimant from appearing and asserting title to the property.

Nor does the fact that the claimant is prosecuting another suit in the same court for the same cause, prevent his appearing and asserting title to the property in the attachment case.

A sale of flour, the vendor drawing a draft for the purchase money on the vendee, at one day after sight, is a sale on *credit*, though indefinite as to the time of payment, because of the uncertainty when the draft would be accepted.

As to what constitutes delivery, regard must be had to all the facts bearing upon the question, and especially to the character of the transaction and the interest of the parties, in order to ascertain whether the delivery was such as the nature of the case admitted.

Where flour is purchased for shipment, and marked with the initials of the purchaser and the ship, and delivered to the proper agent of the ship, it is as complete a delivery as the subject-matter under the circumstances reasonably allowed.

Delivery to the master or agent of a vessel, where the goods are designed for shipment, is equivalent to delivery to the vendee.

Where goods are ponderous actual delivery is not required, but a constructive delivery may be implied from various acts, such as designating them for the use of the purchaser, by marking or removing them for the purpose of being delivered.

The fact that the vendor took receipts for the flour, in his *own name* from the warehouse-man, is not sufficient to countervail the legal effect of his delivery of the flour to the warehouse-man, marked with the initials of the vendee and the ship, after *acceptance* of a draft drawn by him on the vendee for the purchase money; by these acts the property was transferred to the vendee, and the title of the vendor divested.

By acceptance of a draft, drawn by the vendor upon the vendee, for the purchase money of personal property, the title passed to the vendee, independent of delivery.

A note or acceptance, given at the time of purchase, does not destroy the vendor's right of action on the original agreement for the sale of goods, but suspends the right to sue till the expiration of the credit, and operates to pass title to the vendee, subject to the vendor's lien, if he has not parted with the possession, or his right of stoppage if the goods are *in transitu*.

The subsequent failure of the vendee to pay the draft does not affect the question of title; if one sells to another who becomes insolvent before payment, the property in the goods passes to the vendee, though the vendor may have a remedy for the price, by lien or stoppage *in transitu*, according to the *situs* of the property at the time of failure.

APPEAL from the Superior Court of Baltimore City.

*Attachment* on warrant, issued at the instance of the appellants, on the 24th of February 1857, against Howard & Poor, a firm doing business in Alexandria, Virginia. Under

this writ, the sheriff, on the 26th of February 1857, attached "as per schedule," one hundred barrels of flour, as the property of Howard & Poor, the flour being, at the time, in the hands of Ford & Rogers.

Howard & Poor then filed a petition, asking that the attachment might be quashed, so far as this flour was concerned, on the ground that it did not belong to them or either of them, but was the property of Jas. A. Richardson, who had bought it, and paid for it, and was to deliver it to them only when they paid him for it, which they had not done, and that Richardson had never lost his lien or any right of possession and control over the flour. The plaintiffs answered, alleging that they could prove that the flour was the property of Howard & Poor, or one of them, and the court dismissed the petition.

On the 25th of March 1857, the court, on application of the plaintiffs, ordered the sheriff to sell the flour, as a perishable article, "and hold the proceeds subject to the ultimate decision of this cause." The flour was accordingly sold by the sheriff, and, on the 12th of October 1857, the plaintiffs applied to the court, by petition, asking that the proceeds in the hands of the sheriff might be paid over to them, upon their giving a bond in the penalty of $1200, with two good sureties, approved by the court, to save harmless the defendants, "and all other persons who may be interested in said flour." Upon this petition, the court, on the same day, passed an order, directing the sheriff to pay over the proceeds to the plaintiffs, on their executing a bond to the State, with two sureties, to be approved by the court, in the penalty of $1200, conditioned "to save the defendants and all other persons, harmless, in case this suit shall be decided against the said plaintiffs." Such a bond, conditioned as prescribed, was accordingly filed and approved, and the proceeds paid over to the plaintiffs.

On the 10th of December 1857, Richardson filed his claim of property in the flour attached, and also a plea, averring that the plaintiffs ought not to have condemnation of the flour, because it was not the property of the defendants in the at-

Hall & Loney *vs.* Richardson.

tachment. The plaintiffs moved the court not to allow this claim to be set, up for the reasons:

1st. That the said Richardson is testing his right to the property in question, by suit brought to the May term, 1857, of this court, and, having elected such remedy, it is now too late to raise the same issue in this cause.

2nd. It is not competent for a claim now to be filed, because the flour has been sold by order of this court, and the proceeds paid over to the plaintiffs, by the court's order, after giving bond to indemnify parties in interest.

3rd. It is too late for Richardson to come into court as a claimant of the flour attached.

The court overruled this motion. The claimant then filed, as a second plea, that Howard & Poor were not indebted to the plaintiffs, as alleged in their short note. On this plea, and that claiming property in Richardson, issues were joined on which the case was tried.

*1st Exception.* The plaintiffs proved the indebtedness of Howard & Poor to them, to the amount of $1042.95, and their partnership, and that of Howard & Poor, and rested. The claimant then proved that the flour attached was purchased by him from C. D. Hinks & Co., for $600, and paid for by him, out of his own proper moneys, and gave in evidence the bill and receipt of Hinks & Co. therefor, showing that the purchase was made on the 15th of January 1857, and paid for on the 20th of February 1857, the receipt further stating that the flour was "to be delivered at the buyer's option, at any time between the 15th and 28th days of Febuary 1857, payable on delivery, or, if not demanded previous to the 20th of February, the sellers may require payment on that day, or on any day thereafter, but the buyers may not be required to remove the flour previous to the 28th." He further proved, by Roach, that the flour, seized by the sheriff, was received from the claimant by witness, as warehouse-man for Ford & Rogers, the agents for the ship Annapolis, and receipts given therefor to the claimant. These receipts, dated the 23d of February 1857, were offered in evidence, and run thus: "Received from Richardson & Co., on board ship

Annapolis," &c. The same witness further proved, that such receipts are ship receipts, and that the bills of lading are made out from them, and that they are given up when the bills of lading are signed.

The plaintiffs then proved that the ship "Annapolis," mentioned in the above receipts, was bound for Liverpool, and it was admitted that the flour in question was purchased by the claimant, on account of Howard. The plaintiffs further proved, that the firm of Howard & Poor were located in Alexandria, Va., at the time the indebtedness to the plaintiffs was created, and that Howard still resided there, and then offered in evidence a draft for $600, by Richardson & Co., upon Charles Howard, Alexandria, Va., dated Baltimore, February 20th, 1857, payable one day after sight, to the order of Geo. C. Miller, Cash., and accepted on the 21st of February 1857. The signatures on this draft were admitted to be genuine, and it was also admitted that it was drawn for the purchase money of the flour mentioned in the evidence, was protested at Alexandria, on the 25th of February 1857, and returned to the Bank of Commerce, where it had been discounted for Richardson, and that, on the 27th of February 1857, Richardson paid the amount of this draft to the bank, and the same was then and there returned to him, and has since continued in his possession.

The plaintiffs further offered in evidence certain orders, dated the 23rd of February 1857, by which Richardson directed Hinks & Co. to deliver the flour in question, marked in a certain manner, to certain specified drays, and that the flour was marked H. A., as directed in these orders, which marks are the same as these mentioned in the ship receipts, referred to by the witness, Roach. The plaintiff then asked the following instructions to the jury:

1st. If the jury find that the claimant, Richardson, sold the flour in question to Howard, and caused the same to be marked as stated in the evidence, and delivered to the wharfinger, to be shipped to Liverpool, by the "Annapolis," and shall further find that the claimant drew the draft, offered in evidence, upon Howard to liquidate the purchase money of

Hall & Loney *vs.* Richardson.

said flour, and that Howard accepted the draft, and that the claimant parted with the draft, for value as mentioned in the evidence, then the claimant is not entitled to a verdict in this case.

2nd. If the jury find, from the evidence, that the flour in question was sold by the claimant, Richardson, to Howard, and that the claimant drew the draft, offered in evidence, on Howard for the purchase money, and that Howard accepted the draft, and that the claimant passed away this draft, for value, as stated in the evidence, then there was a legal transfer of the property in this flour, by the claimant to Howard, and the claimant cannot sustain his claim, notwithstanding the jury may find that the draft was dishonored by Howard, and the same paid by the claimant, as drawer.

3rd. That if the jury find that the claimant drew the draft, offered in evidence, on Howard, and that Howard accepted it, and that it was drawn to liquidate the purchase money of the flour, alluded to in the evidence, then such facts show a payment by Howard for the flour, and the burden of proof is upon the claimant to convince the jury that such draft was not intended as payment thereof.

The court (LEE, J.) rejected all these prayers, and to this ruling the plaintiffs excepted.

*2nd Exception.* The court then instructed the jury that, if they find from all the evidence in this cause, and find the same to be true, that the flour in question was sold and delivered by Richardson, the claimant, to Howard & Poor, and their accepted draft received in payment of the same, then the plaintiffs are entitled to recover, unless the jury shall find that the flour was sold as for cash, and that before the said Howard & Poor came into possession of the same, or had it under their control, they failed to pay for said flour, then the claimant is entitled to a verdict in this case.

To the granting of this instruction, the plaintiffs excepted, and, the verdict and judgment being against them, appealed.

The cause was argued before LE GRAND, C. J., TUCK and BARTOL, J.

51    v.16

*Benj. C. Barroll,* for the appellants, argued:

1st. That Richardson had no right to file a claim for the flour, after it had been sold and the proceeds paid over to the plaintiffs by order of the court. A claimant must make his claim while the property is in the hands of the sheriff, or under the control of the court. Whether the order directing the payment over to the plaintiff was regular and legal, or not, is not a subject-matter of inquiry in this court on this appeal. It must be treated as having been rightfully passed, no appeal having been taken from the order, which is the only mode by which it can be revised by this court. After the property has been taken out of court, by the order of court, and handed over to the plaintiffs, the court has ceased to have any further *jurisdiction* over it. If the claimant of property lingers upon his rights until *the thing claimed* has passed away from the custody and control of the court, and injury ensues, he has his own laches to blame for it. If a party is allowed, as *claimant,* to litigate his claim to property not in the custody of the court or under its control, the question in such case is, (according to the form of the claim, 2 *Ev. Harr.,* 47,) "Shall the property be condemned or not?" If the verdict should be for the plaintiffs there could be no condemnation of the property, because it is not in court, and the court stultifies the law as well as itself by allowing such an issue to be made and decided by the jury. The true answer is, that it is too late to make the claim when there is no property in court to respond to the verdict; it is a proceeding *in rem,* and the *rem* must be in court. Moreover, the recovery could not be from the plaintiffs, because there is no pretence that they ever had the flour in their possession or under their control. It could not be recovered from the sheriff, because the court had previously ordered the flour to be sold, and had afterwards ordered the proceeds to be paid over by the sheriff to the plaintiffs. The sheriff, therefore, was exonerated by the order of court.

2nd. That the claimant having brought his action of trespass for taking of the flour, has elected his remedy, and it was not competent for him to become a claimant in this case,

while that trespass suit was pending. The averment in the record is, that Richardson is testing his right in the same court by the property in question, by suit brought to the May term 1857, and the plaintiffs, at the hearing of the motion, offered the record of the suit in question in evidence, and the court, not differing as to the fact alleged, but differing as to the law, overruled the motion. It is submitted, upon all the analogies and as a matter of public policy, that a party having elected his remedy, cannot afterwards institute proceedings to test the same questions.

3rd. But if the claimant was properly in court, it is then insisted that the prayers of the plaintiffs ought to have been granted. The *first* prayer was offered and rejected in the court below, solely on the alleged ground that, there was no evidence of a delivery of the flour. To this it is answered: 1st, that it was marked for Howard; *Story on Sales, sec.* 311; 8 *G. & J.,* 418, *Clary vs. Fuyer; 2 Kent,* 501, 502; 2nd, the legal title was in Howard, and the title draws to it the possession of personal property, and possession and delivery are co-relative terms in law; 3rd, possession or delivery may be inferred by a jury from the exercise of acts of ownership; 6 *Md. Rep.,* 18, *Atwell vs. Miller;* 4th, there was actual delivery to the ship for Howard; 5th, there was nothing left for Richardson to do to complete the delivery; 6th, there was a constructive delivery; 4 *Gill,* 270, *Van Brunt vs. Pike;* 6 *Md. Rep.,* 10, *Atwell vs. Miller; Story on Sales, sec.* 306.

The appellee says that, the marks on the flour were not to designate the flour as Howard's and for the ship "Annapolis." The evidence is that the flour was for Howard, and it would be a violent and absurd conclusion to suppose that H. meant Hinks. Hinks had been paid for it; it was purchased for Howard, and the conclusion is irresistible that it was being shipped for Howard, as it could not be shipped for any one else without fraud, which is not to be presumed. Again, the appellee further says, that Richardson bought the flour from Hinks to fill an order from Howard & Poor. From this it might be argued that the flour belonged to Howard from the

beginning, that Richardson never had any title to it, having acted only as an *agent*. It would then follow that the delivery to *him* was a delivery to his principal, and the argument if advanced by the appellee would be suicidal. But there is evidence, and the case was tried below on this theory, that there was a purchase by Richardson from Hinks of flour intended for Howard, and a sale of that flour by Richardson to Howard. The claim, as filed, avers the flour to be the property of Richardson, and is in conflict with the idea that he was Howard's agent in the purchase of the flour. The claim filed asserts *title* in Richardson, and not that he had a right to possession or a lien upon it.

The *second* prayer is also good law. There was no delivery necessary if title to the flour had passed otherwise to Howard. If the draft was drawn (as admitted) for the purchase money of the flour, then there was a *purchase* or a sale of the flour. Howard bought it—Richardson sold it, and the moment a note or draft is taken for goods sold, the title to the goods vests in the vendee, and is not retained in the vendor until the maturity of the note. Suppose the goods are burned up before the maturity of the note, it is the loss of the vendee, whether the goods are actually delivered or not. Not only so, but taking a note destroys the vendor's lien and he cannot withhold the delivery of the goods, (*Story on Sales*, secs. 286, 291; 2 *Bing.*, *N. C.*, 755, *Hewison vs. Guthrie*) because as soon as a note is given, the vendee has the right to immediate possession, and such right is inconsistent with the right of lien in the vendor. The right of stoppage *in transitu* is not involved in the case at all, and Richardson, in fact, never exercised that right if he had it. The appellee seeks to use the petition of Howard and Poor, in which they say that the flour was only to be delivered to them when paid for by them, but it is submitted that that petition, or the facts contained in it, are not before this court; the only *evidence*, at which this court can look, is to be found in the *bills of exception*. Further in support of the law of this prayer, see 5 *Gill*, 101, *Gough vs. Edelen;* 6 *Md. Rep.*,

37, *Foley & Woodside vs. Mason;* 3 *Md. Rep.*, 67, *Stewart vs. Redditt.*

The *third* prayer should also have been granted. It is conceded, that as between vendor and vendee, an unpaid overdue note or draft is not payment. But where the rights of third parties intervene the rule of law is different. If these appellants were not trespassers when they caused the flour to be seized, the subsequent payment of the draft by the appellee cannot make them such. The real question is whether Richardson, on the day the flour was attached, had not been paid for it? He had assigned the indebtedness of Howard to himself, *to the Bank of Commerce for value received.* As soon as Howard accepted the draft he owed the *bank,* and Richardson had no claim whatever upon him for the purchase money of the flour. The reason why an over-due, unpaid note is not payment as between vendor and vendee, is that the vendor suing for the original indebtedness *has the right to cancel or annul the note.* As between them the note is only evidence of indebtedness and not payment, but as between third parties, the vendor has not the right to cancel the note if the rights of such third parties are thereby changed; all the decisions on this subject relate to the immediate parties to the note. But in the present case the draft was not annulled or cancelled. It remains in full force, and is therefore to be considered as payment of the original indebtedness for the flour, even as between Richardson and Howard.

3rd. That the instruction given by the court was erroneous. The court rejected the plaintiffs' first prayer, because it was said there was no evidence of delivery, and yet, by this instruction, the question of delivery was put as a fact to the jury. The court also rejected the plaintiffs' third prayer, that the draft was *prima facie* evidence of payment, and yet put the question as a fact to the jury, that the draft was received in payment, and required the jury to find the sale and delivery, as well as the payment, to entitle the plaintiffs to recover, when either a sale and delivery, or payment, was sufficient. And then, although the jury might find the sale and delivery, yet the plaintiffs still could not recover if the jury

found the flour was sold for cash, and that before Howard came into possession of it he failed to pay for it. But there is no evidence that the sale to Howard was for cash. The appellee says that the presumption of law is, that all sales are for cash unless otherwise stipulated. But the evidence in the case is conceded to be that *the draft* was for the purchase money of the flour, and if the flour was sold for a draft, as shown by the testimony, it was not a *cash sale*. What is the usage of trade, in su h cases, is not shown as it ought to have been, if it was to be contended that it was a sale for cash. It was a sale *on time*, and not a sale for cash. Again, the court's instruction involved the contradiction of requiring the jury to find a sale and *delivery* of the flour to Howard & Poor, and then annulling the force of such sale and delivery, provided they had failed to pay for said flour before they came into possession of it, or had it under their control.

*Geo. W. Dobbin,* for the appellee:

The practice of filing a claim of property in attachment by a stranger to the attachment suit, is one which, though not based upon any Act of Assembly, is now well-established by long and uniform usage. It grows out of the necessity of the case, and affords a short and simple mode by which the title to the property attached may be tried, and if found to be in the claimant, the property itself may be restored to its rightful owner. As long as the property remains in court, the subject of dispute between the plaintiff and defendant, or the garnishee, any one claiming the property may rightfully intervene and assert such claim. The appellant supposes that, because the court had, upon his application, ordered the property to be sold, that after the change of the property from *flour* into money, the claim of property comes too late. This would be a ready and simple mode of purchasing the rights of third persons. But the Act of 1839, ch. 39, under which the form of ordering the sale is given, directs that "the proceeds of sale shall be paid into court, and be deposited to the credit of the suit in which the order shall have been passed." It cannot be supposed that the law meant to change the rights

of the parties, by a sale ordered to be made upon the ground that the thing attached is perishable. Nor is the claim of Richardson altered by the fact, that after the money was brought into court, it was paid to the plaintiffs, by the order of the court, upon their filing a bond to save all persons harmless. It is respectfully submitted, that such order was wholly irregular, and not warranted by any Act of Assembly, nor by any established practice in attachment suits. There was no condemnation *nisi*, and no recognizance, as is usual where execution is issued before the expiration of a year and a day. But if it were otherwise, the condition of the bond is, that the obligors "shall save the defendants, and all other persons, harmless, in case the suit aforesaid shall be decided against the said plaintiffs." To enable Richardson to recover upon this bond, he must sustain the title to the property as his own, which could only be done by his filing his claim in the attachment suit, and making it good in proof. The claimant, Richardson, was not bound to elect his remedy, but could both claim the property in attachment and sue in trespass. 6 *G. & J.*, 298, *Ranahan vs. O'Neale.* 10 *Md. Rep.*, 14 *Trieber vs. Blocher.* Nor was Richardson bound to delay his action of trespass till his claim in the attachment suit was established. The right of action in trespass was complete as soon as the property was taken. But, if not so, the objection that he also claimed the property in the attachment may be taken when the trespass suit comes to be tried. The two suits are for different things. The *claim* seeks to recover the property *in specie*—the trespass suit, damages for the taking and detention.

The main question in the cause, is, did the dealings between Howard & Poor and Richardson pass the title in the flour from the latter to the former. Richardson bought the flour from Hinks, and paid for it with his own money, thus vesting a complete title in himself. But he bought it to fill an order he had received from Howard & Poor. The flour was delivered by Hinks to Richardson, and by the latter sent on board the ship "Annapolis," he, Richardson, taking the ship owner's receipts for the same in his own name. These

receipts were retained by Richardson, and never delivered to Howard & Poor. In their petition filed in the cause, Howard & Poor admit that the flour was to be delivered to them only when paid for by them. But, it is contended that, Richardson having drawn for the flour at one day's sight, which draft was accepted by Howard, and had been discounted for Richardson by the Bank of Commerce, the receipt by Richardson of the draft was payment for the flour, and transferred the property therein to Howard & Poor, notwithstanding Richardson had endorsed the draft, and, when it came back dishonored, had paid it, and produced it at the trial. The taking of a promissory note is not a payment which extinguishes the original contract, unless the party receiving it expressly agrees that it shall be received as payment, or unless he parts with it, and cannot produce it at the trial to be surrendered or cancelled. The reason in the former case is, that the note, being of no higher dignity than the original contract, will not merge it, and can only be substituted for it by an express contract of substitution; and, in the latter case, that if the party were allowed to recover on the original contract, without the surrender of the note, the debtor might be compelled to pay twice. In this case, the note was produced at the trial, upon notice by the plaintiffs. *3 Cranch*, 311, *Harris vs. Johnston*. *6 H. & J.*, 170, *Insurance Co. vs. Smith*. *2 G. & J.*, 509, *Glenn vs. Smith*.

But there was, not only no payment for the flour, but *no delivery* of it, either actual or symbolical. Richardson bought the flour from Hinks, and paid him for it. It was delivered to him, and by him sent to the ship "Annapolis," and the receipts for it taken to him, Richardson, in his own name, Howard's not being mentioned nor known in the transaction. No bills of lading were ever made out, the attachment having intervened, but the proof is that if bills of lading had been made out according to the commercial usage, they would have followed the form of the receipts, and would have been issued in the name of Richardson. There is surely nothing thus far which shows a delivery to Howard, for he had nothing whatever to do with the transaction. But Richardson

directed the flour to be marked H–A, and the plaintiffs contend that such marking constitutes a transfer of the property by a symbolical delivery. It is respectfully submitted, that this proposition is not law. *First:* it is not to be assumed that H–A meant "Howard, Annapolis," any more than it meant "Hinks, Annapolis." There are cogent reasons why Richardson might have required Hinks, who had sold him flour contracted to be of a particular kind and quality, to mark the flour he delivered, so that in the event of a dispute as to the proper fulfillment of his contract, he could be confronted with his own marks. *Secondly:* the mark was not shown to have been put there by the direction of, or agreement with, Howard, and is not such a marking with the name of a buyer as is intended to show to all the world that the barrels so marked were the property of Howard. A marking with the name of a buyer, passes the property only in cases where such marking is made by agreement between the parties, as the evidence of a change of property, and to stand in the place of an actual delivery, and not where a mark is put on only to distinguish the property so marked from others, or when it is, either, part of the bargain that the property shall change only when paid for, or it is the evident intention that payment shall precede delivery. Thus a tradesman who, when a customer selects goods, lays them aside and marks his name upon them, loses thereby no right of possession or property, till he is paid for them. The authorities fully sustain this position, and none more fully than *Story on Sales,* cited by the appellants.

The counsel for the appellants, objects to the instruction of the court that there was no evidence that the sale was made for *cash.* The defendants, Howard & Poor, admitted that the flour was to be paid for *before delivery,* which is a sale for *cash,* and the evidence was that Richardson, before he parted with the flour, he living in Baltimore, and Howard in Alexandria, drew on him at one day's sight, which is equivalent to cash, and held on to the flour till the draft could be collected. In presumption of law, all sales are for *cash,* unless otherwise stipulated. Here there is no proof of any different

Hall & Loney *vs.* Richardson.

terms. The collection by a draft at one day between parties resident at a distance from each other, the property *still* remaining under the control of the seller, is a *cash* collection.

Tuck, J., delivered the opinion of this court:

We are of opinion that the court properly admitted the appellee to appear and assert title to the property in dispute. There had, it is true, been a sale of the flour, and the appellants had received the money from the sheriff, but the order of sale expressly provided that the sheriff should "hold the proceeds subject to the ultimate decision of this cause," and when the court permitted the appellants to have the use of the money, on giving bond with sureties, it was not intended to change the nature of the fund, or to deprive a claimant, if he proved successful in his suit, of the benefits secured to him by the Act of 1839, ch. 39. "The effect of the sale was to convert the goods into money, which remained in the hands of the sheriff, to await the determination of the attachment, subject to any claims that might have been asserted against the goods themselves " *O'Brien vs. Caldwell, Ante,* 122. The bond was required for the indemnity of all concerned, and, indeed, an accommodation to the plaintiffs, who could not have obtained the use of the money without it. And, although it might furnish a cause of action against the obligors, their liability depended on the termination of the suit adversely to the plaintiffs, and of necessity implied a controversy about the property in the present case. This doubtless was the understanding of the court and the parties, and they ought not to pervert the court's indulgence into a means of protracting the litigation, if the case goes against them.

The objection that the appellee was prosecuting another suit for the same cause, cannot be sustained. The case of *Trieber vs. Blocher,* 10 *Md. Rep.,* 14, though not decided on the same state of facts, must govern the present, the same principle being applicable to both.

The result, as to the rulings on the prayers and the instruction given, must depend on the ownership of the flour at the time the attachment was laid. And here we may remark

that the doctrine of *stoppage in transitu* is not involved; the prayers do not present the case in that aspect, nor have the counsel so treated it, for, on both sides, it appears to have been conceded that if the title passed to Howard the attachment would lie.

The flour was purchased by Richardson, on the 15th of January 1857, "to be delivered at the buyer's option, at any time between the 15th and 28th of February, payable on delivery, or if not demanded previous to the 20th of February, the seller may require payment on that day, or any day thereafter." On that day Hinks' bill for the flour was paid. On the same day Richardson drew the bill of exchange on Howard, for the purchase money of the flour, at one day after sight, and negotiated it at bank. The draft was accepted on the 21st, protested at Alexandria on the 25th, returned to the bank, and taken up by Richardson on the 27th. In the meantime—on the 23rd and 25th—all the flour had been marked with the initials of Howard and of the ship, as directed by Richardson, and delivered to the warehouse-man of the ship's agents. It is admitted that the flour was purchased by the claimant on account of Howard, and the evidence shows that it was purchased to be shipped to Liverpool on his account. It is not shown why the flour was sent to the ship before advice of the non-payment of the draft; an inference may be drawn from this fact that the claimant, after the acceptance, considered the purchase as closed. As the case is presented by the record, it was a sale on credit, though indefinite as to time of payment because of the uncertainty when the draft would be accepted.

There is evidence in the cause warranting the conclusion, that Richardson bought the flour as Howard's agent, but, as the counsel have considered the transaction as a purchase by Richardson of flour intended for Howard, and a sale of that flour by Richardson to Howard, and as the rulings below appear to have been based on that theory of the case, we shall view it in that aspect.

The first prayer asserts that the sale to Howard, marking the flour, and delivering it to the warehouse-man to be shipped,

the drawing of the draft, its negotiation for value, and acceptance by Howard, are sufficient in law to prevent the claimant's recovery. The second prayer affirms that the sale and the draft, and its acceptance and negotiation, operated a transfer of the flour to Howard, and that the claimant cannot recover, although the draft, on being protested, was taken up by Richardson. And the third goes upon the ground that the facts stated as to the draft constituted a payment to Richardson by Howard for the flour, unless the claimant showed that it was not intended as payment. The propositions presented by the last two are substantially embraced by the first.

Many cases have been decided in reference to the sale and delivery of chattels. The principles governing such questions appear to be well settled, but much difficulty is often presented when judicial tribunals come to apply them, arising from the great variety of mercantile transactions. Some of the cases are difficult to be reconciled, if not altogether inconsistent, with others, and in most it may be said that the courts have endeavored to ascertain the intent of the parties, and applied that test as a controlling principle, in defining their rights and obligations, inattention to which has, not unfrequently, caused great injustice. Regard must be had to all the facts bearing upon the particular question, and, especially, to the character of the transaction in which the parties may have been engaged, to ascertain whether the delivery was such as the nature of the case admitted. 2 Kent, 500. The flour was not to be sent to Howard, or actually delivered to him; its proper destination was the ship Annapolis, by which it was to have been carried abroad, and for which purpose it had been purchased, and, when marked and delivered to the proper agent of the ship, it was in a custody consistent with the execution of that purpose; it was as complete a delivery as the subject matter, under the circumstances, reasonably allowed. That delivery to the master or agent of a vessel, where the goods are designed for shipment, is equivalent to to delivery to the vendee, see 2 Kent, 499, et seq., and Story on Sales, sec. 306. Where the goods are ponderous, actual

delivery is not required; a constructive delivery may be implied from various acts, among which are, designating them for the use of the purchaser by marking, or removing them for the purpose of being delivered. *Clary vs. Frayer*, 8 *G. & J.*, 398. 4 *Gill*, 270. 6 *Md. Rep.*, 10. 1 *Camp.*, 233. *Story on Sales, sec.* 311. 2 *Kent*, 500, 503. It is reasonable to suppose, from the nature of the transaction, that the flour was so delivered in pursuance of such understanding between the parties to the sale. It is not pretended that Richardson designed to ship the flour as his own; why, then, did he send it to the ship, except for the purpose of shipment on Howard's account, in accordance with his object in authorizing the purchase? By the terms of the purchase from Hinks, he had until the 28th of February to remove the flour. This was after the due-day of the draft, and afforded abundant time to have made the delivery after having received notice of its payment, if payment was a condition precedent to the transfer of the title to Howard.

Reliance was placed, in argument, on the circumstance, that Richardson had taken the receipts from the warehouse-man in his own name, as showing an intention not to part with control over the flour. We do not think that this fact is sufficient to warrant the presumption suggested, for the purpose of overcoming the legal effect of his other acts in the business. The evidence does not show that the bill of lading would necessarily have been made out in his name, and if this had been done, an assignment to Howard would have made the shipment conform to the original object of the purchase, as fully as if the receipts and bill of lading had been taken in his name. It was a proper precaution on the part of Richardson to identify this flour as that shipped by him on Howard's account, in the event of any question being raised as to the fact of delivery.

In the absence of testimony, qualifying or explaining these acts of Richardson, we must conclude that he considered Howard entitled to the flour on his acceptance of the draft, and that he designed the delivery to the warehouse-man as a completion of the contract, by which the property was transferred to the purchaser, and the title of the vendor divested.

We are also of opinion that the title passed to Howard upon his acceptance of the draft, independent of the delivery. A note or acceptance given at the time of purchase does not destroy the vendor's right of action on the original agreement for the sale of goods, but it is a payment *sub modo*, (6 *H. & J.*, 166;) it suspends the right to sue for the price until the expiration of the credit, and operates to pass title to the ven- dee, subject, of course, to the vendor's lien, if he has not parted with possession, or to his right of stoppage, if the goods are *in transitu.* The interests of trade and the variety and extent of circulation of property which it has introduced, require that it should be so, for most commercial transactions are based on negotiable securities, and where the terms of the contract are complied with, possession may be demanded by the vendee, because right of possession accompanies the title, (8 *G. & J.*, 398,) though this rule of law may be dispensed with by agreement, according to the maxim, *"Modus et conventio vincunt legem."* 2 *Md. Rep.*, 73. *Broom's Max- ims*, ch. 7, *p.* 303. *Walker vs. Birch*, 6 *Term Rep.*, 258.

In the case of *Dixon vs. Yates*, 5 *Barn. & Adolp.*, 313, (27 *Eng. C. L. Rep.*, 86,) where the vendee gave his accept- ances for the price of the article, but there was no actual deliv- ery, it was held, that, while the bills were running, the vendee had the power to take it into his possession, and to dispose of and sell it, but not having exercised that power by any suffi- cient means, the property revested in the seller upon the bills being afterwards dishonored, and, accordingly, his lien for the purchase money was recognized. The difficulty in the case was, whether there had been such a delivery to the purchaser as defeated the seller's lien, but *Lord Denman*, and the other judges, treated the bills of exchange as a payment suf- ficient to vest the title in the vendee. It does not follow, however, that such a payment will merge the cause of action on the original contract between the parties, if the note or bill is not paid. See *Smith's Merc. Law*, 624, 661, (*Ed.* 1858;) *Smith's Law of Cont.*, 330; *Story on Cont.*, secs. 484, 500; *Chitty on Bills*, (8th *Ed.*,) 80, 84; 10 *Barbour*, 573; *Chitty on Cont.*, 353; *Hewison vs. Guthrie*, 29 *Eng.*

Hall & Loney vs. Richardson.

*C. L. Rep.*, 477; *Bunney vs. Poyntz, 4 Barn. & Adolph.*, 568, (24 *Eng. C. L. Rep.*, 118.)

The question of title is not affected by the subsequent failure of Howard to pay the draft. If one sells to another, who becomes insolvent before payment, the property in the goods passes to the vendee, though the vendor may have a remedy for the price by lien or stoppage *in transitu,* according to the *situs* of the property at the time of failure to pay. *Chitty on Contracts,* 335. In this case, Howard became bound for the flour on the 21st of February; that liability was to the bank, or to whoever might have become the holder of the draft. Is it just that, being so liable, by reason of Richardson's act in negotiating the draft, the latter should be considered as owner, and the flour liable to seizure for his debts, while Howard might have the money to pay? If this were an attachment, at suit of Richardson's creditors, claiming the property as his, we do not suppose any authority could be produced to the effect, that under the circumstances disclosed by the record, the title remained in the vendor, and had not passed to the vendee, and we are not aware of any principle of law to warrant such an unreasonable conclusion.

There was error also in the instruction which the court gave. By the first clause the jury was required to find, as essential to the plaintiffs' recovery, a sale, delivery and payment by the bill of exchange, whereas, if there was a sale and delivery, or a sale and payment, the title passed; and by the second clause, the jury was authorized to find for the defendant on certain facts, as to some of which the record furnishes no evidence. Without adverting to other objections urged in argument, the judgment must be reversed on all the rulings of the court below.

*Judgment reversed and procedendo ordered.*

(Decided July 13th, 1860.)