WILLIAM L. HOPKINS *vs.* JOHN K. COWEN AND
OSCAR G. MURRAY, RECEIVERS OF THE BALTI-
MORE AND OHIO RAILROAD COMPANY.

*Sales—Reservation of Property in the Seller by Transmission of Bill
of Lading in Seller's Name, Together With Draft for the Price.*

When a seller ships goods to the buyer under a bill of lading by which
they are deliverable to the order of the seller, and the bill of lading
is transmitted together with a bill of exchange, the seller thereby
reserves a right of disposal, and the property in the goods does not
pass to the buyer until the bill of exchange is paid.

Plaintiff ordered a quantity of flour from the M. Co. without any stipu-
lation as to the time of payment.  The flour was delivered to the
defendant, carrier, and plaintiff was notified that the seller had de-
posited in bank a draft for the price attached to the bill of lading.
By the bill of lading the flour was consigned to the order of the M.
Co. with a direction to "notify" plaintiff.  No offer to pay the draft
or obtain the bill of lading, without which the carrier would not de-
liver the flour, was made until several weeks after plaintiff was
notified of the arrival of the consignment, when the bank holding
the bill of lading and draft refused to accept payment and deliver
the bill of lading because the M. Co. had so directed.   In an action
of replevin against the carrier, who pleaded property in the M. Co.,
*Held*, that since plaintiff could obtain no title or right of possession
to the goods without having first paid the draft, he was not entitled
to recover.

Appeal from the Baltimore City Court (DENNIS, J.)  The
verdict for the defendant assessed the value of the property
replevied at $881.

The cause was argued before McSHERRY, C. J., FOWLER,
PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*R. B. Tippett* and *William S. Bansemer*, for the appellant.
The carrier cannot defeat this action of replevin upon the
plea that if the plaintiff prevails, it will be liable for a
breach of contract in allowing the goods to go out of its

possession, without the production of the bill of lading. The principle of law is settled, that the common carrier is exonerated from his obligation to his bailor, when the property of the latter is taken by legal process. " The carrier cannot say to the sheriff, who is armed with a writ of replevin, issued in due form of law, commanding him to take the property, that it has executed a bill of lading and thereby agreed to transport the property to another State, and therefore he cannot have it. The sheriff would have the right, and it would become his duty to call out the power of the county to serve his process. . The carrier is deprived of possession by superior power—the power of the State— *vis major*—which equals the act of God or the public enemy." *Ohio & Miss. R. R. Co.* v. *Yohe*, 51 Ind. 184. "If the person from whom the wharfinger receives the goods, claims the same by a title illegal, so that he cannot lawfully hold them, and they are taken by the authority of the law out of the custody of the wharfinger, the latter may show this in excuse for not delivering them." *Burton* v. *Wilkinson*, 18 Vt. 190; *Kohn* v. *Richmond R. R. Co.*, 34 Am. St. Rep. 726, 735; 4 *Elliott on Railways*, p. 1537.

The duty of the carrier is merely to notify his consignor of the proceedings. He is not bound to defend the suit. *Stiles* v. *Davis*, 1 Black, 101, 106; *Pingree* v. *Detroit R. R.*, 66 Mich. 145; *VanWinkle* v. *U. S. Mail S. S. Co.*, 37 N. Y. 122; *Edson* v. *Weston*, 7 Cow. N. Y. Reports, p. 280; *Hutchinson on Carriers*, pp. 396, 398; *Schouler on Bailments and Carriers*, p. 428; *Eng. & Am. Ency.*, ed. II., vol. 5, p. 240. The carrier, the defendant, can neither object to the proceeding on the ground that the unproduced bill of lading will be negotiated to some *bona fide* holder, without notice, because in the attempt to negotiate it, the bill itself would give actual notice of Hopkins' rights. *Dold Packing Co.* v. *Ober*, 71 Md. 164.

So having shown, first, that the carrier in possession is the proper party defendant; and secondly, that the carrier is practically unaffected by, and is an indifferent party to these

proceedings, and that it will not incur liability from any source by the taking by legal process of the goods; it follows that the plaintiff is entitled to prove a sale had been effected between the plaintiff and the Milling Company, and that when he tendered payment for the draft in question, on the 4th day of May, 1898, he had a right to the immediate possession of the goods.

To effect a sale, it is only necessary that the parties fully agree, with respect to a thing capable of identification, that for an agreed price the title to the thing shall pass from the vendor to the vendee. We submit that if it be sold, with agreement that possession shall not be given till price paid, the vendor has merely a lien for his price, though nothing but tender or actual payment can give the right to possession. *Cheney* v. *Eastern Trans. Line,* 59 Md. 565.

Here, as in the above case, a complete contract of sale was made, with the stipulation that delivery of possession only was dependent upon payment or tender of purchase-price. Upon which being done, the plaintiff's right to maintain replevin is established.

In this case, as in *Hall* v. *Richardson*, 16 Md. 413, it must be concluded that the Milling Company considered Hopkins entitled to the flour on his payment of the draft, and that the company designed the delivery to the carrier as a completion of the contract by which the property was transferred to Hopkins, and the title of the Milling Company divested. "Where the buyer purchases and the seller segregates and appropriates to the contract, the specified quantity by delivery to the common carrier, the mere fact that the goods are to be paid for on arrival, does not prevent the title from vesting in the vendee." *Farmers' Co.* v. *Gill,* 69 Md. 545.

In this case all the elements of the contract of sale are present and a valid and absolute contract is made. The delivery of the goods, however, being dependent upon payment. In other words, it was merely a contract of sale for cash, a promise for a promise, which had been executed by

the Milling Company and was about to be executed by Hopkins, in accordance with their established custom of dealing. It is submitted, that the breach by the Milling Company will not be countenanced by this Court.

*John T. Mason, R.*, and *Charles S. Hayden*, for the appellees.

Replevin is the appropriate remedy in Maryland to test the right to possession of chattels, and obtain possession thereof. To maintain the action, right of possession at time of issuing the writ must be in the plaintiff. *Lamotte* v. *Wisner*, 51 Md. 561; *Seldner* v. *Smith*, 40 Md. 613; *Rogers* v. *Roberts*, 58 Md. 522; *McGuire* v. *Benoit*, 33 Md. 186; *Cumberland* v. *Tilghman*, 13 Md. 83; *Clary v. Frayer*, 8 G. & J. 421.

And if the right of possession be in the defendant, the action must fail, and judgment be for defendant. Title *and* right of property in chattels is only involved in the action of replevin when in addition to the right of possession, pure and simple, both plaintiff and defendant claim the ownership, which is not so in this case, as the railroad only insists that it has the right of possession, and that, paramount to all comers while the negotiable bill of lading is extant. *McKenzie* v. *B. & O. R. Co.*, 28 Md. 174; *Cumberland* v. *Tilghman*, 13 Md.83; *Clary* v. *Frayer*, 8 G. & J. 421. The pleas filed in this case of property in the defendant and in another, though apparently inconsistent, are proper, and the usual ones in cases of this nature. *Lamotte* v. *Wisner*, 51 Md. 561; *Smith* v. *Wood*, 31 Md. 297.

The replication of plaintiff alleging title in himself threw the whole burden of proof on him. *Lamotte* v. *Wisner*, 51 Md. 561; *Horsey* v. *Knowles*, 74 Md. 604; *Smith* v. *Wood*, 31 Md. 297. The verdict and judgment as rendered are in accord with *Farmers' Co. v. Brown*, 87 Md. 7.

Under Act 1876, 262, Code, Art. 14, sec. 1: "The full and complete title to the property in said instruments mentioned (bill of lading) and all rights and remedies incident to

such title shall enure to and be vested in each and every *bona fide* holder thereof for value."

The flour was made by the shipper, and confessedly was the property of the shipper prior to shipment.   The bill of lading was drawn to shipper's order, and was at the time of the issuing of the writ in this case in the possession of the shipper's agent, the bank.   Under which circumstances, since the shipper had never parted with it, there can surely be no question as to his being the *bona fide* holder of the bill of lading for value.   Decisions are to be found in Maryland involving the interpretation of their statute and the question of the *bona fide* holder of bill of lading for value, but same only discuss the *bona fides* as to successive holders of the bill of lading, and not as to the holding by the original shipper.   *Tiedman* v. *Knox*, 53 Md. 616 ; *Seal* v. *Zell*, 63 Md. 360.

Aside from the title (which to the holder of the bill of lading carries the right of possession), being in the shipper under the Maryland Statute, many decisions at large and under the common law are found, clearly showing that the carrier can only deliver on surrender of the bill of lading properly endorsed, when the same is issued in name of the shipper.   *Hutchinson on Carriers*, section 130; *Penna. R. R.* v. *Stern*, 119 Pa. 29; *Sohn* v. *Jervis*, 101 Ind. 582; *Kentucky* v. *Globe*, 42 L. R. A. 356.   And the uniform reasoning is that the bill of lading is the symbol of title, and issuing it to the order of the shipper plainly imports an intention on his part to retain the *jus disponendi*.   *Emory* v. *Irving*, 25 Ohio, 360.

The added memorandum on the bill of lading as in our own case, " notify Hopkins," raises even a stronger presumption that the shipper intended to retain title and all rights.   For the same act that ear-marks the goods as shipped on account of Hopkins, shows in an unmistakable manner that there is something else essential to be done before the goods are his.   The carrier is not called upon to know what if any contract is binding between the shipper and party to be

notified, or whether purchase money is due. The bill of lading announces in a mandatory way "the goods belong to the shipper ; don't deliver to anyone without bill of lading." *Kentucky* v. *Globe*, 42 L. R. A. 356 ; *Libbey* v. *Ingalls*, 124 Mass. 505.

The business interests of the community demand that a consignor in a distant part of the country should have the right to ship property to be delivered to the purchaser only upon the condition that the purchaser first actually pay for the same. The established and well-known method of doing this is by a draft, bill of lading attached, to be surrendered on payment of draft. *Dows* v. *Nat. Ex. Bank*, 91 U. S. 618 ; *Kentucky* v. *Globe*, 42 L. R. A. 356 ; *Seal* v. *Zell*, 63 Md. 360. Even if the draft be accepted, the property is still wholly under control of shipper. *Hall* v. *Richardson*, 16 Md. 414. Shipment subject to order of consignor, plainly imports the intention on part of shipper to retain title, which governs. *Berger* v. *State*, 50 Ark. 23 ; *Alabama* v. *Mt. Vernon Co.*, 81 Ala. 177; *McCormick* v. *Joseph*, 77 Ala. 236 ; *Benjamin on Sales*, 399.

The title carrying with it the right of possession does not vest under such circumstances until actual delivery of the bill of lading. *Alabama* v. *Mt. Vernon Co.*, 81 Ala. 177; *Berger* v. *State*, 50 Ark. 20. The fact that the goods were originally intended for a particular party ; that bill of lading was marked " notify ;" that draft was forwarded or even accepted, in nowise prevents the consignor, from at any time prior to delivery of the goods, diverting the shipment to other channels, or recalling it absolutely, provided he have the bill of lading. *Emory* v. *Irving*, 25 Ohio St. 360, 18 Am. Rep. 299 ; *Lester* v. *McDowell*, 18 Penna. 94 (6 Harris). The sending by shipper of an invoice of the goods to the consignee is in itself no evidence of title in the consignee, in the presence of the overbearing manifestation of a contrary intent by having the bill of lading to order of consignor. *Dows* v. *Nat. Ex. B.*, 91 U. S. 618 ; *Penna. R. Co.* v. *Stern*, 119 Pa. St. 29.

For the plaintiff to maintain the action he must show either—right of possession, or, title and right of possession. The right of possession without title rarely arises, save in cases of bailment, and where there exists a vendor's lien or lien for work done, or charges. Hopkins does not claim right of possession, but title with right of possession. Now, argumentatively, if he had title, when did he acquire it? If he contends that the title passed to him at the time of original shipment, even against the array of cases quoted, and the circumstances showing an insurmountable presumption to the contrary, and should this Court so hold, still remains the vendor's lien. *Hall* v. *Richardson*, 16 Md. 414. And with it the right of possession in the vendor which will successfully defeat the writ of replevin. *Lamotte* v. *Wisner*, 51 Md. 561 *Seldner* v. *Smith*, 40 Md. 613 ; *Rogers* v. *Roberts*, 58 Md. 522 ; *McGuire* v. *Benoit*, 33 Md. 186 ; *Cumberland* v. *Tilghman*, 13 Md. 83 ; *Clary* v. *Frayer*, 8 G. & J. 421.

If title was not acquired at time of shipment, surely there is no other time at which it could pass, except by Hopkins obtaining the bill of lading, which he never did. Or let us suppose that the possession of the goods perfected in him the title to same, yet will he fail in his action. Because to maintain the writ, the right of possession and title, or right of possession at least, must be shown at the time of issuing the writ, and since the plaintiff's possession followed the recovery under the writ, the replevin was illegal. *Rogers* v. *Roberts*, 58 Md. 522, and the cases just cited. Even title after acquired would not give the right to proceed as of a prior date on the basis of the later acquisition. *Alabama* v. *Mt. Vernon Co.*, 81 Ala. 177.

A point not already mentioned to show that title did not pass at the time of shipment, is that the goods were to be delivered in Baltimore, shipper to pay freight. So, therefore, the title incontestably remained in shipper until flour reached Baltimore, and to that point at least all risk of loss or damage was in the shipper. *Merrick* v. *Bradley*, 19 Md. 55 ; *Ruhl* v. *Corner*, 63 Md. 185 ; *Farmer* v. *Gill*, 69 Md.

550; *Merchants* v. *Bangs*, 102 Mass. 295.

And now as to the evidence excluded. The issue being upon the title and right of possession, the best proof of which being the bill of lading, and the same not being produced, under the well-known principle, secondary evidence would be inadmissible, which of itself disposes of the entire testimony. It appears that the absence of the bill of lading is explained, that is to say, the shipper had it, which in a few words proves Hopkins has no case, wherefore the ruling of the Court below.

PAGE, J., delivered the opinion of the Court.

The appellant in this case sued the appellee in replevin to recover the possession of two hundred and ten sacks of flour. The pleas are, property in the appellees, and property in the Winnebago City Mill Company.

At the trial the appellant, to sustain the issues on his part, offered to prove, that he had been engaged in purchasing flour from the Winnebago City Mill Company for a number of years; that on January the 11th, 1898, he ordered from the company the flour in question, " without any agreement as to the terms of payment," and that " the flour was subsequently shipped by the said company to the appellant at Baltimore City; that the course of dealing at and before that time, was as follows, viz., the Mill Company (whose place of business is in Winnebago City, Minnesota), at the time of shipment, would draft for the value of the shipment, attach thereto the bill of lading; these drafts usually arrived a few days before the goods; and the appellant, as he needed the flour, would call at the banks where the drafts were placed by the company and were payable, and 'take them up;' that all of the flour so shipped 'was booked by the Mill Co. as an absolute sale.' " Included in the appellant's offer, was evidence of other sales and shipments by the Mill Company, showing the general course of dealing between the parties, and also copies of the letters and telegrams of the parties respecting such sales,

and of the checks of the appellant in payment of the several drafts of the Mill Company on the appellant. There also appears in the proceedings, the bill of lading and the draft attached thereto, which the parties agree may be considered by this Court, as if included in the offer of the appellant, and incorporated in the bill of exceptions. The Court below rejected this offer, and the verdict and judgment being for the appellee, the appellant has appealed.

The action being in replevin, the burden is upon the appellant to prove an immediate right to the possession of the goods ; and, inasmuch as the appellee has pleaded property in the Winnebago City Mill Company, he must show a title superior to that of the company. *Lamotte* v. *Wisner*, 51 Md. 561.

The question, therefore, now before the Court, is to determine whether the facts contained in the offer, would be sufficient, if properly proved, to enable a jury or the Court sitting as a jury, to find that the title or the right of possession, has passed from the Mill Company, and become vested in the appellant.

The flour in dispute was shipped from Winnebago City on January 21st, and about the same time the Mill Company forwarded by mail to the appellant, an invoice with the following words appended thereto, viz., " we have drawn on you at arrival of goods for the proceeds, with railroad receipt attached to the draft." By reference to the " receipt," or bill of lading, it appears that the flour was consigned to the company itself. Over the name of the consignee, the Mill Company, is written the word " order," and below, the words, " notify W. L. Hopkins ;" without any other condition or limitation. One of the conditions of the shipments, as appears printed on the bill of lading, is, that " if the word ' order ' is written thereon before or after the name of the party to whose order the property is consigned without any condition or limitation other than the name of the party to be notified of the arrival of the property, the surrender of this bill of lading, properly endorsed, shall

be required before the delivery of the property at destination." The bill of lading, with draft attached, was sent by the Mill Company to the Western National Bank at Baltimore, whose duty it was retain possession of it until the appellant had paid the draft. When such payment was made, the appellant was entitled to receive the bill of lading, and upon proper endorsement, by the terms of the bill itself, and according to the usual course of dealings between the parties, the appellant was in a position to demand the possession of the goods. The flour arrived in Baltimore in due time, and the appellant was notified thereof by the railroad company. He made no effort, however, to pay the draft until the fourth of May. On that day he tendered his check, but the bank refused to accept it, and notified him that it had received notice on the previous day, from the Mill Company not to accept payment of the draft from him. It also refused to deliver to him the bill of lading, although both the bill and the draft were then in its possession.

It is contended on the part of the appellant, that all the facts, as we have stated them, establish the following propositions, viz.: 1st, that a sale had been effected between the Mill Company and the appellant, whereby the title to the property became vested in the appellant; 2nd, that the agreement necessarily implied, amounted to a complete contract of sale, with the stipulation that delivery of possession was dependent upon payment or tender of purchase price; and 3rd, that when the appellant tendered his check in payment of the draft (having sufficient funds in bank to meet it), he had the right to the immediate possession of the flour.

The general rule applicable to the passing of title to personal property has been well stated in *Dixon* v. *Yates*, 5 B. & Ad. 313. In that case, it was said by PARKE, J., " where there is a sale of goods generally, no property in them passes till delivery, because until then the very goods sold are not ascertained; but, when, by the contract itself,

the vendor appropriates to the vendee a specific chattel, and the latter thereby agrees to take that specific chattel, and to pay the stipulated price, the parties are then in the same situation as they would be after a delivery of goods in pursuance of a general contract. The very appropriation of the chattel is equivalent to delivery by the vendor, and the assent of the vendee to take the specific chattel, and to pay the price, is equivalent to his accepting possession. The effect of the contract, therefore, is to vest the property in the bargainee." The fundamental principle upon which this rule rests is to carry out the intention of parties who have agreed " with respect to a thing capable of identification, that for an agreed price the title to the thing shall pass from the vendor to the vendee." *Cheney* v. *Eastern Trans. Line*, 59 Md. 565.

When the contract is express, there can be no difficulty ; but when the evidence with respect to it is meagre, Courts must endeavor "to ascertain the intent of the parties and apply that test as a controlling principle." *Hall & Long* v. *Richardson*, 16 Md. 412. So also where the agreement is for a sale of the property, and the performance of other things, it must be ascertained whether the performance of any of those things is meant to precede the vesting of the title in the vendee. *Blackburn on Sales*, 151, cited in *Benjamin on Sales*, book 3, chapter 3. Accordingly, it is held that where a buyer purchases a specific quantity of goods to be shipped to him from a distant place, and the seller segregates and appropriates to the contract the specified quantity by delivering them to a carrier, the law presumes that to be equivalent to delivery to the vendee (16 Md. 412, *supra*) ; and in such case the goods become the property of the vendee, although they are to be paid for on arrival (*Farmers' Phos. Co.* v. *Gill*, 69 Md. 545), the carrier being regarded as the agent of the vendee to receive it. But if the vendor undertake to make delivery himself at a distant-place, the carrier becomes the agent of the vendor, and the property will not pass until delivery is made. In

both such cases, the inference arising from the facts stated, may be rebutted by other circumstances, which tend to show what the interest of the parties really was.  *Dows* v. *Nat. Ex. Bk. of Milwaukee*, 91 U. S. 618–637; *Farmers' Phos. Co.* v. *Gill, supra.*  In the case last cited, where the goods had been consigned to the vendee, after stating the general rule, that a bill of lading operates as a transfer of the property to the party in whose favor it is drawn and to whom it is delivered, the Court remarks that " if the vendors in that case had wished to prevent the property from passing, and to retain the right to deal with it after shipment and while *in transitu,* they should by the bill of lading have made the cargo deliverable to their own order, and have forwarded the same to an agent of their own to retain it, until the cargo had been finally delivered, weighed, tested, and paid for in Baltimore."  In *Kentucky Ref. Co.* v. *Globe Refining Co.*, 42 L. R. A. 358, the Court said, citing from *Alderman* v. *Eastern R. Co.*, 115 Mass. 233, " that when goods are consigned deliverable to the order of the consignor, and the bill of lading, with a draft for the price drawn on the purchaser of the goods attached, is forwarded for collection, the purchaser has no title to the goods until the draft is paid, and the bill of lading is endorsed to him."  In *Merchants' Nat. Bk.* v. *Bangs*, 102 Mass. 205, it was said that a vendor " may take the bill of lading or the carrier's receipt in his own or in some agent's name to be transferred on payment of the price, by his own or his agent's endorsement to the purchaser, and in all cases when he manifests an intention to retain the *jus disponendi* the property will not pass to the vendee."  *Hardy* v. *Munroe,* 127 Mass. 64; *Emory* v. *Irving, &c.*, 25 Ohio, 360; *Penn. R. R. Co.* v. *Stern*, 119 Pa. St. 29.

In this case the Mill Company consigned the goods deliverable to its own order ; it forwarded the bill of lading, with the draft attached ; all parties understood that the former was not to be given up by the bank until the latter had been paid, and by the terms of the bill of lading it was pro-

vided. that the flour was not to be delivered until the bill of lading properly endorsed was presented to the carrier. We find nothing in the offer that can be effectual to modify the legal inferences to be drawn from these facts. It is stated that the appellant ordered the flour " without any agreement as to the terms of payment." But it is plain that it was accepted upon the terms that had characterized their entire dealing—which were, that the flour should remain in the possession of the carrier, subject to the order of the Mill Company, until the draft had been paid. The whole course of these dealings shows that the Mill Company was to pay the freight and deliver the flour in the city of Baltimore, and that the appellant was not to be entitled to possession until after the draft had been paid. The invoice cannot have the effect of modifying the contract, which the facts so clearly imply. The purpose and effect of that was to give a description and cost of the goods ; it was not " a bill of sale nor evidence of a sale" (*Dows* v. *Ex. Bank, supra ; Sturm* v. *Baker*, 150 U. S. 328 ), and even though in some cases it may be useful, in connection with other facts, to show the intent of the parties, yet in this case no inferences can flow from it tending to alter or change the intent inferrible from the circumstances already stated, for the reason, that appended to the invoice, as a part of it, was the explicit statement that the Mill Company had drawn on the appellant at arrival for the proceeds "with railroad receipt attached to the draft."

Upon the whole offer, it seems to us clear that it was not the intent of the parties that the title to the flour should pass to the appellant until the draft had been paid. The judgment must therefore be affirmed.

*Judgment affirmed.*

(Decided December 6th, 1899).