Mr.-Justice DAVIS
 

 delivered the opinion of the court.
 

 On the theory that the order of the Secretary of War of March 9th, 1860, granting-to Taliafero and Grant the privilege of furnishing and delivering, at certain posts in Arizona, for two years, all the supplies that might be needed there for the service, at certain stipulated rates, was a contract, mutually binding on the government and th,e claimant, the obligations imposed on the parties to it are clearly defined.
 

 It was the duty of the claimant, as well- as his exclusive privilege, to furnish all the supplies which were needed for
 
 *336
 
 ' the upeof the service in Arizona, and on the receipt of the goods
 
 there,
 
 the government was bound to pay him for them the' prices which were fixed in the order. .It is too plain for -controversy, that the property did not vest-in the United Stated until it was delivered. To escape the-"force of this rule >at law, it is insisted, as the goods were inspected in New York and pronounced to be óf the proper kind and' quality, that the title then passed to the United States, and that they only remained in possession' of the claimant for. transportation, and as he was prevénted from delivering thé'm.by the public enemy, the loss must be, borne by the United States.' • This position cannot be sustained; for’ the inspection at New York, on which it is based, did not work .a change of title in the property, nor was it in the contemplation of the parties- that it should. It did' not affect the contract at al-l. The goods,» by a well-known usage of the War' Department, had- to be inspected somewhere, and ás the contract contained nothing on the subject, it yrás for the advantage of the contractor that they should be inspected before 'shipment, rather than at the point of delivery. The' War Department took upon itself no additional responsibility by inspecting them in New York, instead of Arizona, and this'inspebtionin nowise- relieved the claimant from any obligation which'he had assumed.. He had agreed to deliver the goods in Arizona,'and until he did this there was no contract on the part',of the .government, either express or implied, to pay him for them. All that the certificate of Major Eaton, the inspecting officer, proves, is, that the goods, when presented to him for inspection, were'contained in strong, sound, full-hooped barrels and well-secured tierces; properly marked with, the names of the .places to which they were destined, and were of the kind and quality usually provided by the subsistence department.
 

 • But, it is said the capture of the property is chargeable' to the delay of the War Department in making the inspection, and in consequence of this, that the government is not only ,bound to pay for the supplies which were taken possession of by the enemy, but also to reimburse the claimant for the
 
 *337
 
 loss of his wagons and teams. The answer to this is, that the order of the 9th of March, 1860, did not require inspection at Boston or New York, and if the Secretary of War chose to change the oi’der afterwards, by directing that the goods should be inspected at those places, it was optional with the claimant whether or not he would submit to such direction.
 

 But, conceding that the Secretary of War had the right to direct where the goods should be inspected, still he was not required to inspect, until the goods were substantially ready for inspection, and he was notified,of the fact; and it is plain, by the finding of the court below, that after such notice and actual .readiness, he did not culpably delay the-inspection. The evidence shows very clearly, that the difficulty which the agents of the claimant experienced in filling the requisition, was the cause of the delay in inspecting and shipping the goods. If, however, it be admitted that the government was in default in not inspecting sooner, that default had no connection with the subsequent injury suffered by the claimant, and was not the proximate cause of it. In such a case the rule of law applies, that where property is destroyed by accident, the party in whom the title is vested must bear the loss.
 
 *
 

 It is insisted that this rule does not apply where private property is seized by the public enemy without any default of the owner, and that in such a case the government is bound to indemnify the sufferers. But the principles of public law do not sanction such a doctrine, and Yattel (page 403) says no action lies against the state for misfortunes of this nature. “They are accidents caused by inevitable necessity, and must be borne by those on whom they happen to fall.”
 

 Whether there are equities in this particular case, and if so, whether they require that the claimant should be reimbursed, in whole or in part, for the capture of his property, under the circumstances, are questions that must be addressed
 
 *338
 
 to Congress,, for it is not the province of the iudicial department of the government to determine them.
 

 The only remaining point in the case, relates to the rescission by Secretary Cameron of the order of the 9th of March. This proceeding was undoubtedly taken because the supplies needed in Arizona could be either purchased there at cheaper rates, or forwarded more securely from St. Louis. Whether the conduct of the Secretary of War was or was not justifiable, is not a question tobe considered in deciding this suit, for the claimant has not shown a state of ease on which he could recover if the rescinding order had never been made. The contract entitled him to furnish, at certain prices, all the supplies that might be needed in Arizona until the 20th of March, 1862. To enable him to recover, for a breach of this contract, he should have proved that supplies were needed at the posts in Arizona after the rescinding order was made, and the pecuniary loss he sustained in not being allowed to furnish them. This he has wholly failed to do.
 

 We cannot see that this is a case for even nominal damages; but if it is, the Court of Claims was not instituted to try such a ease.
 

 Judgment aeeirmbd.
 

 *
 

 McConihe
 
 v.
 
 The New York and Erie Railroad Company, 20 New York,
 
 496.