SEELIGSON and others *v.* PHILBRICK.

(*Circuit Court, S. D. Florida.* December 13, 1886.)

**SALE—TITLE—BILL OF LADING AND DRAFT—LOSS.**

On March 16, 1886, S. telegraphed P.: "Offer 2 cars sacked oats. Can ship next steamer. 40 cents, f. o. b.;" to which P. answered: "Telegram received. Ship as soon as possible, if quality good and offer f. o. b. Last car poor; short weight, badly sacked." On 19th, S. shipped per steamer two car-loads oats to shipper's order, and indorsed bill of lading, "Deliver to order of B. H. & Co.," and attached a sight draft on P. for price and marine insurance. B. H. & Co. indorsed the bill of lading to a bank, and forwarded it with draft for collection. No bill of lading was forwarded to P., but S. wrote him of the shipment, and sent invoice and certificates of weights. The oats arrived before the bill of lading, and the agent of the steamer informed P. that there were two car-loads of oats that he could have on presenting indorsed bill of lading. On 29th the bank received and presented to P. the bill of lading, and attached draft for collection, but the draft was not paid, and the bill of lading was not delivered. The oats were put in the steam-ship warehouse, and the same night destroyed by fire. *Held*, that the title had not passed, and that the loss must fall on S.

At Law. *Assumpsit.*

By the court without jury, by stipulation.

*W. C. Maloney*, for plaintiffs.

*G. Bowne Patterson*, for defendant.

LOCKE, J. On the sixteenth March, 1886, plaintiffs, merchants of Galveston, telegraphed to defendant, at Key West: "Offer two cars sacked oats. Can ship next steamer. 40 cents, f. o. b. Reply by wire quick if wanted;" to which he replied: "Telegram received. Ship as soon as possible, if quality good and offer f. o. b. Last car poor; short weight, badly sacked." On the 19th plaintiffs shipped per steamer two car-loads of oats to Key West, consigned to shipper's order, and indorsed the bill of lading, "Deliver to order of Ball, Hutchings & Co.," and attached a sight draft on defendant for price of oats, and marine insurance, which they had paid. Ball, Hutchings & Co. indorsed the bill of lading to the order of the Bank of Key West, and forwarded it to that bank, with draft for collection. No bill of lading was forwarded defendant, but plaintiffs wrote informing him that they had shipped him two

car-loads of oats, and sent invoice and certificate of weights. The oats reached Key West before the letter containing the bill of lading, and the agent of the steam-ship informed defendant that there were two car-loads of oats that he could have by presenting an indorsed bill of lading. Neither of the banks at that time held the bill of lading or draft, so that the defendant could not obtain the property. On 29th the Bank of Key West, having received the bill of lading with draft attached, presented the same for collection, but the draft was not paid, nor the bill of lading delivered. The merchandise remained in the steam-ship warehouse, and that night was destroyed by fire. This is a suit to recover the price.

The principle of law is well established that, where property is destroyed by accident, the loss falls upon the holder of the legal title, (*Grant* v. *U. S.*, 7 Wall. 331;) and the question here is, in whom was the title to the property destroyed, at the time of its destruction? Had there been a full and perfected sale, which passed the property from the plaintiffs to the defendant, so that he became bound to pay the price?

Mr. Benjamin, in his treatise on Sales of Personal Property, has so clearly laid down what may safely be accepted as the law upon the subject that it is but necessary to examine the facts of the case in question in the light of his rules. The rules that would apply in this case are, first, where the goods, in pursuance of an order, are delivered to a carrier to deliver to the buyer, the carrier is presumed to act as agent of the buyer, and delivery to the carrier is delivery to the buyer; but where goods are delivered on board of a vessel to be carried, and a bill of lading is taken, the delivery by the vendor is not a delivery to the buyer, but to the captain, as bailee for delivery to the person indicated by the bill of lading. The fact of making the bill of lading deliverable to the order of the vendor is, when not rebutted by evidence to the contrary, almost decisive to show his intention to reserve the *jus disponendi*, and to prevent the property from passing to the vendee. Where a bill of exchange for the price of goods is inclosed to the buyer for acceptance, together with a bill of lading, if he refuse acceptance, he acquires no right to the bill of lading, or the goods of which it is the symbol. When the vendor deals with a bill of lading only to secure the contract price, the property vests in the buyer upon payment thereof. See Benj. Sales, (4th Ed.) § 399, and numerous cases there cited. These propositions of law are accepted as established by numerous decisions, and the supreme court has settled beyond any question what should control in this case. In *Dows* v. *National Exch. Bank*, 91 U. S. 618, the question upon which the final determination of the case rested was almost precisely the same as in this one, namely, whether the title passed from the shipper to the vendee before the payment of the drafts drawn against the shipment. In that case, as in this, the consignment was made to a third party, with drafts for collection, although invoices were sent to the party ordering the purchase. The court says:

"It is true they sent invoices. That, however, is of no significance of itself. The position taken on behalf of the defendant, that the transmission of

the invoices passed the property in the wheat without the acceptance and payment of the drafts drawn against it, is utterly untenable. An invoice is not a bill of sale, nor is it evidence of a sale. Standing alone, it is never regarded as evidence of title."

It is true that in that case the instructions from the shipper to the consignee were that, unless the drafts were paid, the wheat was to be held; but that only established beyond a question that which is the presumption of law in all such cases where shipments are made in such manner, namely, that it is the intention to hold the title and *jus disponendi* until the drafts are paid. This is the *prima facie* conclusion, where the shipment is to shipper's order. In this case there is nothing to rebut such presumption, but, on the contrary, much to strengthen it. One of the plaintiffs testified that such class of goods was always cash on delivery. The order of defendant was accompanied with conditions regarding the quality of the goods, and complaints concerning previous shipments. The agent of the steam-ship required an indorsed bill of lading before he would deliver the goods, although they were marked with defendant's initials. The bank which held the bill of lading retained it because the draft was not paid. Considering the language of the order, the complaint regarding former lots, and the manner of shipment, there can be no doubt but what the vendor intended that all questions should be settled by payment before any title passed by delivery. There had been no selection or appropriation by the defendant, and it must be held that there was no delivery, and that no title had passed. No person can hold the title to merchandise shipped another, for his protection from loss by non-payment, and not at the same time bear the risk of accidental loss.

Verdict and judgment must be for defendant, and so it is ordered.