## THE PENNSYLVANIA R. CO. v. STERN & SPIEGEL.

ERROR TO THE COURT OF COMMON PLEAS NO. 4 OF PHILADELPHIA COUNTY.

Argued January 19, 1888—Decided February 20, 1888.

1. A delivery of goods by a common carrier, otherwise than in accordance with the bill of lading, is in the carrier's wrong and at his risk, the title to the property remaining in the consignor until an authorized delivery.
2. To relieve from this rule on the ground of a delivery in accordance with a course of dealing with the party to whom it is made, the evidence must be sufficient to bring home knowledge to the consignor, in a way that would justify a finding that he had acquiesced in that course and consented to the delivery in the instance in accordance therewith.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 190 July Term 1887, Sup. Ct.; court below, No. 43 December Term 1884, C. P. No. 4.

On November 18, 1884, Raphael Stern and Rosa Spiegel, trading as Stern & Spiegel, brought suit against the Pennsylvania R. Co., to recover the value of a car-load of bones shipped by the plaintiffs from Cincinnati consigned to themselves at Landenburg, Chester county.

Statement of Facts.

At the trial on May 9, 1887, the facts appeared: The shipment was made on September 20, 1883, over railroads connecting with the defendant company and by the latter carried to Landenburg. The plaintiffs attached to the bill of lading a draft at forty-five days upon Thomas Whann, Jr., Landenburg, for $310.45, and sent it to the Oxford National Bank, of Chester county, for collection. On September 23d, the plaintiffs wrote to Mr. Whann inclosing an invoice and W. C. for the car-load of bones, stating that the freight was prepaid, and that they had drawn upon him " as per arrangements," requesting that the draft be protected. The invoice was as follows :

CINCINNATI, Sep. 22, 1883.

MR. THOS. WHANN, JR., Landenburg, Pa.

Bought of STERN & SPIEGEL,

Exporters and Dealers in Horns, Hoofs, Bones, Glue, etc., 595, 597 and 599 West 5th St.

Terms: 45 dys acceptance to BL

1 Car Bones, P. F. W. & C., No. 4212.   Net 23285 at $28.00 pt.   $325 99
Less difference Freight Car 456, Invoice July 30,                     15 84

$310 15

Freight prepaid.

Shipped from Bay City, Mich.,        Flint & Pere Marquette R. R.
    via. F. & P. M. R. R.                Loss and Damage, ·
        to                                  No. 705.
    BL with Draft.                         Claim.

The letter and invoice were received by Mr. Whann on September 25th. The car arrived at Landenburg on the next day, and on that day the company's agent, to whom was exhibited the letter and invoice from the shippers, delivered the consignment to Mr. Whann.

On September 29, 1883, the National Bank of West Grove, a place near Landenburg, notified Mr. Whann that it held the draft upon him from the Oxford National Bank, with bill of lading attached, for collection. Mr. Whann entered into a correspondence with the drawers of the draft, which was finally returned unaccepted on October 2d, and subsequently he failed and did not pay for the bones. There was evidence that Mr. Whann had been receiving such shipments from the plaintiffs for a number of years, delivered to him upon his

siding, upon the production of such letters and invoices, without the production or surrender of bills of lading, and without knowledge on the part of the defendant company whether or not the drafts attached to the bills of lading had or had not been accepted. It was claimed, moreover, that this manner of dealing was known to the plaintiffs. The evidence on this subject was as follows:

Thomas Whann testified: They (the plaintiffs) would write and notify me a certain car was on the way, for me to take care of it, and accept the draft. Then the car would come; sometimes the draft would come before the car, sometimes the car would come before the draft, just according to how many banks the draft would come through. I would accept the draft if it came first; if it came afterwards, I accepted it until this one. Q. Then you would get the bill of lading? A. No, sir; I never got the bill of lading; sometimes I might when I got my bank-book fixed up. The bill of lading and draft all came together. Q. That is, after the draft became due? A. Yes, sir.

The agent of the railroad company, Samuel Martin, testified: Q. Did the bank give you any notice at any time when drafts had been accepted? A. No, sir; I do not know that I ever received any notice from the bank. Q. Did you receive any notice in this case that the draft had not been accepted? A. No, sir.

The court, WILLSON, J., charged the jury:

Gentlemen of the jury: It is sufficient for me to say to you that, this having been a consignment to the order of the plaintiffs, which was brought home to the notice of defendant by the manifest received by its agent and production to him of the invoice showing that the delivery of the bones in question was to be made upon the production of the bill of lading, there is, in my judgment, nothing in the evidence thus far which excuses the defendant for failure to make delivery according to these terms. In other words, that they could only properly deliver upon the production of the bill of lading, or upon the consent of the plaintiffs, or permission of the plaintiffs given to them in some other way than any which has appeared in evidence in this case. That being my view, the

proper verdict for you to render in the case is a verdict for the plaintiffs for the amount of $310.15, with interest from the time when the delivery was made.

The verdict of the jury was in favor of the plaintiffs for $370.82, and judgment being entered thereon, the defendant took this writ, assigning that the court erred in charging as stated and in directing the jury to find for the plaintiffs.

*Mr. George Tucker Bispham* and *Mr. John Hampton Barnes*, for the plaintiff in error:

The legal effect of a transaction such as this, so far as sales and drafts on time, with bills of lading attached, are concerned, has been clearly expressed in The National Bank v. The Merchants' Bank, 1 Otto 92.

1. This is a question between the shipper and the purchaser of the goods. It was not the duty of the carrier to ascertain whether or not the draft had been accepted before delivering the goods. It should deliver, either upon a bill of lading, or else in accordance with a contract other than the bill of lading. Evidence of a custom or usage between the parties, affecting and forming a portion of the contract, was properly admitted: Hursh v. North, 40 Pa. 241; McMasters v. Penn. R. Co., 69 Pa. 374; Cooper v. Berry, 21 Ga. 540; Ontario Bank v. Steamboat Co., 59 N. Y. 510. The plaintiffs were estopped by their acquiescence.

2. Where a carrier does not make a proper delivery, he is guilty of negligence, and the determination of this question is for the jury: Ludwig v. Meyre, 5 W. & S. 435; Shenk v. Propeller Co., 60 Pa. 109; Penn R. Co. v. Miller, 87 Pa. 395; P. & R. R. Co. v. Ramsey, 89 Pa. 474. The construction and effect of the papers and the understanding between the parties, under all the circumstances, should have been left to the jury: Barreda v. Silsbee, 21 How. 165; Brown v. McGraw, 14 Pet. 479; Railroad Co. v. Stout, 17 Wall. 663; Haslam v. Adams Express Co., 1 Bos. 235.

*Mr. Edward E. Nicholas* (with him *Mr. Charles Davis*), for the defendants in error:

1. The title of the shippers, themselves the consignees, had never been divested; so that the case is simply between the

shippers and the carrier. Bills of lading are symbols of property, serving the purpose of actual possession and so continuing until there is a valid and complete delivery of the property under and in pursuance of the bill of lading. There can be no delivery except in accordance with the bill of lading: Hieskell v. National Bank, 89 Pa. 155; Dows v. Milwaukee Bank, 1 Otto 618; Meyerstein v. Barber, L. R. 2 C. P. 38; Stollenwerck v. Thatcher, 115 Mass. 224; Aldermen v. Railroad Co., Idem 223. The exhibition of the invoice was sufficient notice to the defendant company that the car was to be delivered upon certain conditions being complied with. The company's want of reasonable diligence resulted in a loss which they must bear: Fitzherbert v. Mather, 1 T. R. 12; Mundorff v. Wickersham, 63 Pa. 89. An invoice is neither a bill of sale nor evidence of sale, and standing alone furnishes no proof of title: Dows v. Milwaukee Bank, supra; Benj., Sales, § 382.

2. A contract cannot be implied, in order to defeat an express contract: Newcomb v. Railroad Co., 115 Mass. 230; Wernwag v. Railroad Co., 117 Pa. 46. At all events, there was no evidence sufficient to be submitted to the jury to establish custom and usage between the parties: (1) A custom must be uniform; Coxe v. Heisley, 19 Pa. 243; (2) Parol proof of a custom is inadmissible to control the general law of the land: Bolton v. Colder, 1 W. 360; Brown v. Arrott, 6 W. & S. 402; Coxe v. Heisley, 19 Pa. 243.

3. Where the evidence is all one way, and is so satisfactory that a court would not sustain a verdict against it, the judge may declare its true effect and direct a verdict accordingly: Angier v. The Eaton Cole and Burnham Co., 11 W. N. 146; Hyatt v. Johnston, 91 Pa. 196; Raby v. Cell, 85 Pa. 80; Calvert v. Good, 95 Pa. 65. It is the function of the court to pass upon the sufficiency of the whole testimony: Mead v. Conroe, 113 Pa. 220.

OPINION, MR. JUSTICE PAXSON:

The only error assigned is to the charge of the court. It was in substance that the defendant company could only deliver the merchandise upon the production of the bill of lading, and that as there was nothing to excuse delivery without a

compliance with the terms, the jury should find for the plaintiffs.

We see no error in this. The plaintiffs shipped this carload of dry bones from Bay City, Michigan, to Landenburg, Chester county, Pa., consigned to themselves. At the same time they drew on Whann for the amount, at forty-five days. There was a bill of lading attached to the draft showing that Stern & Spiegel, the shippers, had consigned said car to themselves. The letter of the latter to Whann, and the invoice, both of which were shown to the agent of the defendant company at Landenburg, were notice that there was a draft and bill of lading, and that Whann was required to protect the draft. The agent delivered the car to Whann without the bill of lading, and without an acceptance of the draft. This he had no right to do. The title to the property remained in the consignors until delivery in accordance with the conditions. Bills of lading are symbols of property, and when properly indorsed operate as a delivery of the property itself, investing the indorsers with a constructive custody, which serves all the purposes of an actual possession, and so continues until there is a valid and complete delivery of the property, under and in pursuance of the bill of lading, and to the persons entitled to receive the same: Hieskell v. National Bank, 89 Pa. 155. There could be no delivery except in accordance with the bill of lading. Dows v. Milwaukee Bank, 91 U. S. 618; Stollenwerck v. Thatcher, 115 Mass. 224. The invoice standing alone furnishes no proof of title: Benjamin on Sales, § 332; Dows v. Milwaukee Bank, supra.

It was urged, however, that there was a course of dealing between the parties that would take the case out of the rule above stated. The attention of the court below does not appear to have been called to this matter upon the trial. No reference to it is to be found in the charge, nor was any point submitted which would call it forth. There was evidence that the defendant company had on more than one occasion delivered goods from the same shippers to Whann prior to the acceptance of the drafts. No harm came of this because the drafts were afterwards accepted and paid. But this course of dealing between the company and Whann was not brought home to the knowledge of the plaintiffs in a way that would

justify the jury in finding that they had acquiesced in such an arrangement, and that they had consented to the delivery of this particular carload without the production of the bill of lading and acceptance of the draft. The company delivered in their own wrong and assumed the risk.

Nor can we say as matter of law that plaintiffs suffered no loss by reason of the improper delivery. If the draft had been accepted it might have been paid, notwithstanding the failure of Whann, or the plaintiffs might have sold it without recourse.

Judgment affirmed.