ST. LOUIS & S. F. R. CO. v. ALLEN.

No. 1270.  Opinion Filed January 9, 1912.

(120 Pac. 1090.)

CARRIERS—Carriage of Goods—Custody and Control of Goods—Actions Against Carrier.  Prior to the 17th day of October, 1907, L. O. A., of P., ordered from W.-M. Co., of O., a car of coal to be shipped from H. to P.  On said date said car, containing 76,800 pounds, was shipped by W. M. Co. over plaintiff in error's line of railroad to W.-M. Co., at P., shipper's order, "Notify L. O. A."  The bill of lading so drawn and draft for the amount of the invoice including freight, was delivered for collection to W. F.'s agent at P., who was also the agent of plaintiff in error at P.  The car of coal arrived at P. on the 28th day of November, 1907. After it arrived, and on the same day, L. O. A. paid the draft. L. O. A. completed the unloading of the car on November 30, 1907.  After having weighed the coal unloaded from said car, he found that he had received 67,880 instead of 76,800 pounds, as called for by the bill of lading.  A.'s receipt shows W.-M. Co. to be both the consignor and the consignee, and states, "Notify L. O. A."  There is no contention that W.-M. Co. had assigned its right of action to A.  Held, that A. was not entitled to recover, as he showed no title in himself prior to the time he paid the draft and received the bill of lading; all damage occurring prior to that time.

(Syllabus by the Court.)

*Error from Kay County Court;*
*Claude Duval, Judge.*

Action by L. O. Allen against the St. Louis & San Francisco Railroad Company.  Judgment for plaintiff, and defendant brings error.  Reversed, with instructions to grant a new trial.

*W. F. Evans, R. A. Kleinschmidt,* and *W. C. Mitchell,* for plaintiff in error.

*James Q. Louthan,* for defendant in error.

WILLIAMS, J.  This proceeding in error is to review a judgment, wherein the defendant in error, as plaintiff, sued the plaintiff in error, as defendant.

Prior to the 17th day of October, 1907, the plaintiff, L. O. Allen, of Peckham, Okla., ordered from the Wise-Moist Coal

Company of Oklahoma City, Okla., a car of Henryetta lump coal
to be shipped from Henryetta, Okla., to Peckham, Okla.   On
said date, S. F. car No. 16439, containing 76,800 pounds of Hen-
ryetta lump coal, was shipped by the Wise-Moist Coal Company
over defendant's line of railroad to themselves (Wise-Moist Coal
Company), Peckham, Okla., shipper's order, "Notify L. O. Al-
len," and bill of lading so drawn, and draft for the amount of the
invoice, including freight, was delivered for collection to the
Wells Fargo Express Company's agent at Peckham, who was also
the defendant's agent at Peckham.   The car of coal arrived at
Peckham on the 29th day of November, 1907, and after its ar-
rival, and on the date therefor, plaintiff paid the draft.

Plaintiff completed the unloading of the car on the 30th day
of November, 1907, and, after having weighed the coal unloaded
from said car, found that he had received 67,880 pounds, in-
stead of 76,800 pounds, as called for by the billing.   Plaintiff's
receipt shows the Wise-Moist Company to be the consignor and
consignee, and states: "Notify L. O. Allen."

In Elliott on Railroads, vol. 4 (2d Ed.) sec. 1427, p. 64, it
is said:

"A direction in a bill of lading to consignor's order to notify
some one else does not warrant the carrier in delivering the prop-
erty to the person so to be notified without the production of the
bill of lading.   The use of the term 'notify' shows that the party
to be notified was not intended as the consignee, but was simply
to be advised on the arrival of the goods.   The fact that a bill of
lading is made out to the consignor's order makes this still plainer.
Indeed, it has been held that such a contract is so plain and unam-
biguous that a custom in a certain city to deliver property under
similar bills of lading to the person to be notified cannot be
shown."

See, also, authorities cited in footnotes 79, 80 and 81.

In 1 Hutchinson on Carriers (3d Ed.) sec. 187, at page 203,
it is said:

"It is a common practice, where the bill of lading provides
for delivery to the consignor's order, and has gone forward at-
tached to a draft on the purchaser or other person by whom pay-
ment is to be made, to give direction that such person be notified
of the arrival of the goods, in order that he may pay the draft and

procure the goods. Such a direction to notify, however, does not dispense with the production of the bill of lading as in other cases; and if the carrier delivers the goods to the person so to be notified, without requiring him to produce the bill of lading, he will be liable for any loss .thereby incurred: The very presence of the word 'notify' in such a case, it is said, shows that the person named is not intended as the consignee. And although it has been the custom for the carrier to permit the person to be notified to stop the goods at a point short of their destination, and there receive them, without producing the bill of lading, such custom, as against a *bona fide* transferee of the bill of lading, will furnish the carrier with no excuse for making delivery at an intermediate point to the person to be notified, without requiring him to produce the bill of lading."

See, also, authorities cited in footnotes 15, 16, and 17.

In 1 Mechem on Sales, sec. 774, at page 648, it is said:

"Where the seller takes a bill of lading which expressly stipulates that the goods are to be delivered, at the point of destination, to himself or agent, or to his order or assigns, there is the clearest possible evidence upon the face of the transaction that, notwithstanding such an appropriation of the goods as might have been sufficient to transfer the title to the buyer, the seller has determined to prevent this result by keeping the goods within his own control."

In *Dows v. National Exchange Bank,* 91 U. S. 618, 23 L. Ed. 214, it was held:

"The transmission of the invoices of goods does not pass the property in goods without the acceptance and payment of the drafts drawn against them. An invoice is not a bill of sale, nor is it evidence of a sale. A bill of lading, taken deliverable to the shipper's own order, is inconsistent with an intention to pass the ownership of the cargo to the person on whose account it may have been purchased. Where there is any evidence to rebut the effect of the bill, it becomes a question for the jury, whether the property has passed. But where there is no such evidence, there is no necessity of submitting to the jury the question as to whether there was a change of ownership."

In *Seelingson et al. v. Philbrick* (C. C.) 30 Fed. 600, it is said:

"The principle of law is well established that, where property is destroyed by accident, the loss falls upon the holder of the legal title (*Grant v. U. S.,* 7 Wall. 331 [19 L. Ed. 194], and the

question here is, In whom was the title to the property destroyed, at the time of its destruction? Had there been a full and perfected sale, which passed the property from the plaintiffs to the defendant, so that he became bound to pay the price? Mr. Benjamin, in his treatise on Sales of Personal Property, has so clearly laid down what may safely be accepted as the law upon the subject that it is but necessary to examine the facts of the case in question in the light of his rules. The rules that would apply in this case are, first, where the goods, in pursuance of an order, are delivered to a carrier to deliver to the buyer, the carrier is presumed to act as agent of the buyer, and delivery to the carrier is delivery to the buyer; but where goods are delivered on board of a vessel to be carried, and a bill of lading is taken, the delivery by the vendor is not delivery to the buyer, but to the captain, as bailee for delivery to the person indicated by the bill of lading. The fact of making the bill of lading deliverable to the order of the vendor is, when not rebutted by evidence to the contrary, almost decisive to show his intention to reserve the *jus disponendi*, and to prevent the property from passing to the vendee. Where a bill of exchange for the price of goods is inclosed to the buyer for acceptance, together with a bill of lading, if he refuse acceptance, he acquires no right to the bill of lading, or the goods of which it is the symbol. When the vendor deals with a bill of lading only to secure the contract price, the property vests in the buyer upon payment thereof. See Benj. Sales (4th Ed.) 399, and numerous cases there cited. These propositions of law are accepted as established by numerous decisions, and the Supreme Court has settled beyond any question what should control in this case."

In *Willman Mercantile Co. v. Fussy,* 15 Mont. 511, 39 Pac. 738, 48 Am. St. Rep. 698, it is said:

"By the established rules of commercial law, where goods are shipped at the risk of the purchaser and by his order, or if by other evidence the intention of the shipper is made apparent to part with his title, the carrier is held to be the agent of the consignee, and not the agent of the consignor. But, if the seller does not intend to part with his title to and control over the property when he makes the consignment, the authorities regard the carrier as the consignor's agent, and not the consignee's. To get at the intention of the parties to such commercial transactions, the bills of lading are resorted to. If the vendor, when shipping, takes the bill of lading in his own name, this fact, when not rebutted by evidence to the contrary, is very strong proof of the in-

St. Louis & S. F. R. Co. v. Allen.

tention of the vendor to reserve title in himself, and is also de-
cisive to prove the vendor's intention to retain the *jus disponendi*
of the property, and to prevent the delivery of same to the vendee.
*Dows v. Bank,* 91 U. S. 618 [23 L. Ed. 214] ; *Emery v. Bank,* 25
Ohio St. 360 [18 Am. Rep. 299] ; *Selligson v. Philbrick* [C. C.]
30 Fed. 600; *Chandler v. Sprague* [5 Metc. (Mass.) 306] 38 Am.
Dec. 404, and note; *McCormick v. Joseph,* 77 Ala. 236; *For-
cheimer v. Stewart,* 65 Iowa, 594, 22 N. W. 886 [54 Am. Rep.
30] ; *Sohn v. Jervis,* 101 Ind. 578, 1 N. E. 73; *Jones v. Brewer,*
79 Ala. 545; *Moors v. Kidder,* 106 N. Y. 32, 12 N. E. 818; *Bank
v. McAndrews,* 5 Mont. 325, 5 Pac. 879 [51 Am. Rep. 51]. The
plaintiff, the vendor in this case, dealt with the bill of lading with
the manifest purpose of securing the payment for the apples;
and the defendant, by his refusal to pay the draft, acquired no
right to the bill of lading, or to the goods which it represented.
Benj. Sales, 567 ; *Bank v. Logan,* 74 N. Y. 568. When the bill of
lading was taken in the shipper's name, the presumption arose.
that he intended to retain the title in himself. This presumption
must stand as conclusive until it is rebutted by affirmative proof
on plaintiff's part."

See, also, *Berger v. State,* 50 Ark. 20, 6 S. W. 15; *Libby v.
Ingalls,* 124 Mass. 503 ; *Furman v. Railroad Co.,* 106 N. Y. 579,
13 N. E. 587; *Security Bank v. Luttgen,* 29 Minn. 363, 13 N. W.
151; *Bank v. Cummings,* 89 Tenn. 609, 18 S. W. 115, 24 Am. St.
Rep. 618; *Peoria Bank v. Railroad Co.,* 58 N. H. 203; *Pennsyl-
vania Ry. Co. v. Stern,* 119 Pa. 24, 12 Atl. 756, 4 Am. Rep. 626;
*Bergeman v. Railroad Co.,* 104 Mo. 77, 15 S. W. 992; *Joslyn v.
Grand Trunk Ry. Co.,* 51 Vt. 92; *Ward v. Taylor,* 56 Ill. 494.

There is no proof in the record to overcome or rebut this
presumption; nor is there any evidence to show any loss after the
car arrived at Peckham and after the draft was paid. Had this car
of coal, between the points of Henryetta and Peckham, been de-
stroyed on account of some act of God, by which the carrier
would not have been liable for such loss, upon whom would the
loss have then fallen, under the facts as shown by this record—
the consignor, the Wise-Moist Coal Company, or the defendant in
error? Clearly upon the coal company, for the title was in them,
and did not vest in the defendant in error until the payment of
the draft with the bill of lading attached. Had the title vested
in the defendant in error when the coal was delivered to the rail-

way company at Henryetta, and the bill of lading been held by the coal company as collateral security, in that event, had the car of coal been lost by an act of Providence or such circumstances as the railway company would not have been liable, then the loss would have fallen on the defendant in error, and the coal company would have sued him for the value of the car.

There is no attempt in this record to prove that it was the understanding of the parties that the title to the car of coal was to vest in the defendant in error prior to the payment of the draft with the bill of lading attached. The defendant in error has not attempted to bring this action as an assignee of the Wise-Moist Coal Company, but on the theory that he was the owner of the coal alleged to have been lost on account of the negligence of the plaintiff in error at the time of such loss.

Under this record, it was the duty of the Wise-Moist Coal Company to deliver that coal to the defendant in error. The railway company was its agent in making the delivery, and the defendant in error could have maintained an action against the coal company for this loss, or the coal company could have assigned this claim to the defendant in error, and he could have prosecuted the action, as assignee, against the railway company for such damages.

The amount here involved is not large, and it is with regret that we have to reverse cases involving such small amount; but the proposition of law involved in this case is plain. If the coal was lost as alleged by the defendant in error, the Wise-Moist Coal Company was at the time the owner of the same, and the action for such loss must be brought in the name of said coal company, or by its assignee.

It follows that the judgment of the lower court must be reversed, with instructions to grant a new trial and proceed in accordance with this opinion.

All the Justices concur.