NOVEMBER TERM, 1916.        363

McNeely & Co. *v.* Lake Shore, etc., R. Co.—64 Ind. App. 363.

# F. W. McNeely and Company *v.* Lake Shore and Michigan Southern Railway Company.

[No. 9,274.   Filed April 24, 1917.]

1. CARRIERS.—*Carriage of Goods.—Delay in Transportation.— Right to Sue.*—Where a shipper consigned goods to its own order with directions to notify A, and forwarded to a bank for collection a draft on A, with the bill of lading attached, and the draft was not paid nor the bill of lading obtained by him until the goods reached the point of destination, there are no facts to take the case out of the general rule that the right of action against a common carrier for delay in the shipment of goods is in the consignee, who, in the absence of proof to the contrary, is presumed to be the real party in interest. pp. 366, 371.

2. CARRIERS.—*Carriage of Goods.—Bill of Lading with Draft Attached.—Title to Goods.*—Where a bill of lading is made out to the order of the consignor, or of a third party, with directions thereon to notify a certain person, and a draft against such person for the purchase price of the goods shipped is attached to the bill of lading and transmitted to the destination of the shipment through a bank, or otherwise, title to the property described in the bill of lading does not pass to the person to be notified until the draft is paid.  p. 366.

3. CARRIERS.—*Carriage of Goods.—Bill of Lading.—Directions for Notice.—Effect.*—A direction on a bill of lading to notify some one other than the consignee does not qualify the duty of the carrier to deliver the property shipped to the consignee or in accordance with its order, nor does it give to the person to be so notified any right to, or control over, such property until he has obtained and produced a bill of lading or its equivalent.  p. 368.

From Vanderburgh Circuit Court; *F. M. Hostetter,* Judge.

Action by F. W. McNeely and Company against the Lake Shore and Michigan Southern Railway Company. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*Joseph H. Iglehart,* for appellant.

*P. J. Kolb, Walker & Walker* and *Bertrand Walker,* for appellee.

FELT, C. J.—This is a suit by appellant against appellee for damages caused by delay in the shipment of two automobiles from Detroit, Michigan, to Evansville, Indiana, over the lines of appellee and other railroad companies. The complaint was in two paragraphs, each of which was answered by general denial. The court made a general finding for appellee, overruled appellant's motion for a new trial and rendered judgment accordingly. The error assigned and relied on for reversal is the overruling of appellant's motion for a new trial.

The complaint charges that appellant was a dealer in automobiles in the city of Evansville, Indiana, and that on January 28, 1913, the Studebaker Corporation delivered to appellee at the city of Detroit in the state of Michigan, two automobiles for transportation to appellant at Evansville, Indiana; that appellee accepted the same and undertook to so transport them; that appellee and its connecting carriers negligently failed to transport and deliver said automobiles to appellant in a reasonable time and negligently delayed such transportation for the period of sixteen days beyond such reasonable time.; that appellant was damaged by such delay in shipment. Facts are averred to show how such damage resulted from the delay in delivering the automobiles. The paragraphs are substantially alike, except in the first it is alleged that appellant was the lawful holder of the bill of lading for the automobiles, and in the second that it was the owner thereof.

There seems to be no dispute in the evidence as to the material and controlling facts of the case. The Studebaker Corporation on January 28, 1913, consigned the automobiles to the "order of Studebaker Corporation of America, Indianapolis Branch. Destination, Evansville, Ind.—Notify F. W. McNeely & Co." The bill of lading, duly signed by appellee, was attached to

a draft on appellant for $1,740 which reached the Commercial Bank at Evansville a day or so after the date of the shipment, and remained there until Saturday evening, February 15, 1913, when appellant paid it and obtained the bill of lading from the bank.   The car containing the automobiles arrived at Evansville at nine o'clock p. m. that day, and the automobiles were unloaded the following Sunday.   There was also evidence tending to show that such shipment under the usual and ordinary conditions would require from five to ten days, depending in part on the routing.

Numerous questions are discussed, the principal one of which is whether the appellant had such interest in the property at the time of the alleged delay as will enable it to maintain this action for damages.   Appellee contends that the evidence shows that appellant was neither the holder of the bill of lading nor the owner of the two automobiles, when the alleged delay in shipment occurred; that without proof of one or the other of such facts there can be no recovery; that there is no evidence tending to prove either of such facts, but on the other hand the undisputed evidence shows that the bill of lading was made to the order of the Studebaker Company with draft attached and that the draft was not paid and the bill of lading obtained by appellant until the day the automobiles arrived in Evansville. Appellant contends that it was and is the real party in interest and that by paying the draft and obtaining the bill of lading as above shown, it has the unquestionable right to maintain this suit for damages resulting from the unreasonable delay in shipment as alleged and that it is otherwise entitled to recover under the evidence.

The grounds of the motion for a new trial relied on by appellant are: (1) The decision of the court is not sustained by sufficient evidence; (2) The decision is contrary to law.

366    APPELLATE COURT OF INDIANA,

McNeely & Co. *v.* Lake Shore, etc., R. Co.—64 Ind. App. 363.

The two automobiles were consigned to the order of the Studebaker company and the bill of lading was sent to the Commercial Bank at Evansville with draft attached, drawn on appellant for the purchase price of the two machines. The bill of lading remained in the bank until the day the automobiles arrived in Evansville when it was obtained by appellant on payment of the draft.

1. The general rule is that the right of action for damages against a common carrier for delay in shipment of goods is in the consignee. The law presumes that the consignee is the real party in interest, and this presumption prevails unless facts are pleaded and proven which show an exception to such general rule. *Pennsylvania Co.* v. *Poor* (1885), 103 Ind. 553, 3 N. E. 253; *Butler* v. *Pittsburgh, etc., R. Co.* (1897), 18 Ind. App. 656, 660, 46 N. E. 92.

2. Where a bill of lading is made out to the order of the consignor, or of a third party, with directions thereon to notify a certain person, and a draft against such person for the purchase price of the goods so shipped is attached to such bill of lading and transmitted to the destination of such shipment through a bank, or otherwise, title to the property described in the bill of lading does not pass to the person to be so notified, until the draft is paid. *St. Louis, etc., R. Co.* v. *Allen* (1912), 31 Okl. 248, 120 Pac. 1090, 39 L. R. A. (N. S.) 309; *Dows* v. *Nat. Exchange Bank* (1875), 91 U. S. 618, 23 L. Ed. 214; *Atlanta Nat. Bank* v. *Southern R. Co.* (1901), 106 Féd. 623, 632; *Manufacturing Co.* v. *Southern R. Co.* (1908), 149 N. C. 261, 62 S. E. 1091; *Hieskell* v. *Farmers, etc., Nat. Bank* (1879), 89 Pa. 155, 33 Am. Rep. 745; *Hopkins* v. *Cowen* (1899), 90 Md. 152, 157, 44 Atl. 1062, 47 L. R. A. 124; *Dalbey & Co.* v. *Mexican Central R. Co.* (1907), (Tex. Civ. App.) 105 S. W. 1154; *Greenwood Grocery Co.* v. *Canadian, etc.,*

*Elevator Co.* (1905), 72 S. C. 450, 52 S. E. 191, 2 L. R. A. (N. S.) 79, 110 Am. St. 627, 5 Ann. Cas. 261.

In Mechem on Sales, (Vol. 1, §774) the author says: "Where the seller takes a bill of lading which expressly stipulates that the goods are to be delivered, at the point of destination, to himself or agent, or to his order or assigns, there is the clearest possible evidence upon the face of the transaction that, notwithstanding such an appropriation of the goods as might have been sufficient to transfer the title to the buyer, the seller has determined to prevent this result by keeping the goods within his own control. This evidence, however, is not absolutely conclusive; though, as stated by the Supreme Court of the United States, 'it is held to be almost conclusive.'".

In *Dows* v. *Nat. Exchange Bank, supra,* the Supreme Court of the United States said: "It is true, they sent invoices. That, however, is of no significance by itself. The position taken on behalf of the defendants, that the transmission of the invoices passed the property in the wheat without the acceptance and payment of the drafts drawn against it, is utterly untenable. An invoice is not a bill of sale, nor is it evidence of a sale. It is a mere detailed statement of the nature, quantity, and cost or price of the things invoiced, and it is as appropriate to a bailment as it is to a sale. It does not of itself necessarily indicate to whom the things are sent, or even that they have been sent at all. Hence, standing alone, it is never regarded as evidence of title."

In *Sohn* v. *Jervis* (1885), 101 Ind. 578, 582, 1 N. E. 73, 75, the court by Elliott, J., said: "Counsel for appellant is correct in asserting that a seller ordinarily delivers the goods when he places them in the hands of the carrier, duly consigned at the place of sale. Here,

however, the appellant did not consign the goods to the seller, but consigned them to himself, and there was, consequently, no delivery. The vendee got nothing, could get nothing, for the carrier was not authorized to place the goods in the hands of any other person than the consignee. It is impossible to perceive how there can be a delivery, where both the title and the right of possession remain in the seller."

A direction on the bill of lading to notify some one other than the consignee does not qualify the duty of the carrier to deliver the property shipped to the consignee or in accordance with its order, nor does it give the person to be so notified any right to or control over such property until he has obtained and produced the bill of lading, or its equivalent. *North Penn. R. Co.* v. *Commercial Nat. Bank* (1887), 123 U. S. 727, 8 Sup. Ct. 266, 31 L. Ed. 287, 289; *Hopkins* v. *Cowen, supra; Atlanta Nat. Bank* v. *Southern R. Co., supra.* In §1427, (Vol. 4, 2d ed.) of his work on Railroads, Judge Elliott says: "A direction in a bill of lading to consignor's order to 'notify' some one else, does not warrant the carrier in delivering the property to the person so to be notified without the production of the bill of lading. The use of the term 'notify' shows that the party to be notified was not intended as the consignee, but was simply to be advised of the arrival of the goods. The fact that a bill of lading is made out to the consignor's order makes this still plainer. Indeed, it has been held that such a contract is so plain and unambiguous that a custom in a certain city to deliver property under similar bills of lading to the person to be notified cannot be shown." In §187 of Hutcheson on Carriers (Vol. 1, 3d ed.) the author states: "It is a common practice, where the bill of lading provides for delivery to the consignor's order and has gone forward attached to a draft on the purchaser

or other person by whom payment is to be made, to give directions that such person be notified of the arrival of the goods in order that he may pay the draft and procure the goods. Such a direction to notify, however, does not dispense with the production of the bill of lading as in other cases, and if the carrier delivers the goods to the person so to be notified without requiring him to produce the bill of lading, he will be liable for any loss thereby incurred. The very presence of the word 'notify' in such a case, it is said, shows that the person named is not intended as the consignee."

In *Forcheimer & Co.* v. *Stewart* (1885), 65 Iowa 593, 22 N. W. 886, 54 Am. Rep. 30, the Supreme Court of the state of Iowa considered a case for damages caused by the elements after the goods were in the possession of the carrier. The bill of lading was in the name of the shipper and was forwarded with draft attached, drawn on the purchaser, for the amount of the purchase price of the shipment. The draft was paid and the bill of lading obtained by the purchaser while the goods were *in transit*. In considering the question of when liability attached, the court said: "Having reached the conclusion that the goods were not delivered by this defendant to the plaintiffs by delivery to the carrier at Council Bluffs, we come to inquire whether they were delivered by delivery to them, later, of the indorsed bill of lading. In our opinion they were. The defendant, from the time of such delivery, had no right or interest in the goods, and the *jus disponendi*, or right of disposing of the goods, had become absolute in the plaintiffs. The goods could not be sold nor encumbered by the defendant, nor properly taken upon attachment or execution by his creditors. This being so, it would seem to follow that the risk of damage from the elements, in the absence of any agreement to the contrary, should be

borne by the plaintiffs. It is true that the plaintiffs could not be considered as having had an opportunity to inspect the goods at the time when the transfer was made to them of the bill of lading. But we do not see how the plaintiffs' inability to inspect at that time could give the transfer of the bill of lading an effect different from what it otherwise would have had. The plaintiffs were not bound to accept the transfer at that time. The defendant had put the goods in transit without a tender of delivery. The plaintiffs might unquestionably have withheld payment of the draft and acceptance of the bill of lading until the goods reached their destination. But for reasons satisfactory to themselves they preferred to pay in advance. It was their right to do so if they preferred and secure whatever advantages there might be from such payment and such acceptance. But in securing those advantages we think they took upon themselves whatever risk there might be of damage from the elements from that time forward."

*St. Louis, etc., R. Co.* v. *Allen, supra,* in its essential facts is quite similar to the case at bar. In that case the purchaser paid the draft and procured the bill of lading for a carload of coal after the car had arrived at its place of destination. According to the bill of lading the car should have contained 76,800 pounds of coal, but when unloaded was found to contain only 67,880 pounds. The purchaser sued the railway company for damages, alleging that the shortage was due to its negligence in making the shipment, and recovered judgment, which on appeal was reversed because the loss occurred before the draft was paid and the bill of lading obtained by the purchaser. The Supreme Court of Oklahoma held that the purchaser could not recover damages for the loss of property to which he had no title when the loss occurred. It said there was no at-

McNeely & Co. *v.* Lake Shore, etc., R. Co.—64 Ind. App. 363.

tempt to prove any special contract or arrangement by which the parties had agreed that the title to the property so shipped should be in the purchaser prior to the payment of the draft attached to the bill of lading; that: "The defendant in error has not attempted to bring this action as an assignee of the Wise-Moist Coal Co., but on the theory that he was the owner of the coal alleged to have been lost on account of the negligence of the plaintiff in error at the time of such loss.   *   *   * If the coal was lost as alleged by the defendant in error, the Wise-Moist Coal Co. was at the time the owner of the same, and the action for such loss must be brought in the name of said Coal Co. or by its assignee."

There is no evidence in this case even tending to prove that appellant was the owner of the automobiles or had possession of the bill of lading when the 1. alleged damage occurred from the delay in shipment. There are no facts alleged or proven to take the case out of the general rule above announced. The court therefore did not err in overruling the motion for a new trial. Questions relating to appellant's alleged damages need not be considered for the judgment must be affirmed for reasons already announced. Judgment affirmed.

Ibach, P. J., Dausman, Caldwell, Batman and Hottel, JJ., concur.

NOTE.—Reported in 115 N. E. 954. Carriers: liability for delay, 11 Am. St. 360; right of one that is to be notified of arrival of goods consigned to another to maintain action against carrier, 39 L. R. A. (N. S.) 309. See under (1) 10 C. J. 297.