No. 22,403.

A. S. BENNETT, doing business as THE BENNETT COMMISSION COMPANY, *Appellant*, v. J. M. DICKINSON, as receiver of THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, and THE UNION PACIFIC RAILROAD COMPANY, *Appellees*.

OPINION ON REHEARING.

SYLLABUS BY THE COURT.

1. BILL OF LADING—*With Customer's Draft Attached—Sent for Collection—When Title Passed to Purchaser*. The former judgment in this case is adhered to, holding that a shipment of a car of corn consigned by the seller to himself, "notify Bennett," the bill of lading having attached a customer's draft drawn by the seller on Bennett and sent to a bank for collection, the title did not pass to Bennett until the draft was paid and the bill of lading surrendered, in the absence of evidence to overcome the presumption that this was the intention.

2. SAME—*Shipment of Corn—Damaged in Transit—"Real Party in Interest" to Maintain Action for Damages*. J. E. Rule delivered to the

defendant railway at Clayton, Kan., a car of corn consigned by himself to himself as consignee, destination, Shady Bend, Kan., and procured a "shipper's order notify" bill of lading to which he attached a draft on Bennett and sent to a bank in Topeka for collection. The corn was damaged in transit; the draft was paid on the day the car reached its destination. Former judgment adhered to, and *held*, the title not having passed to Bennett until the draft was paid, he cannot maintain an action against the railway company for the damages, because the title to the property had not vested in him at the time the damages were sustained, and; having no interest, he was not the "real party in interest."

Appeal from Shawnee district court, division No. 1; ROBERT D. GARVER, judge. Opinion on rehearing filed June 5, 1920. Former judgment adhered to. (For original opinion of affirmance see 106 Kan. 95, 186 Pac. 1005.)

*Eugene S. Quinton*, of Topeka, for the appellant.

*Luther Burns*, and *John E. Dumars*, both of Topeka, for the appellees.

The opinion of the court was delivered by

PORTER, J.: At the former hearing of this case the sole controversy was whether the title to the car of corn had passed to Bennett at the time the damage to the corn occurred. The facts in the case are that J. E. Rule, the shipper, finished loading the car at Clayton, Kan., on the 4th day of May, and at four o'clock on the same day the Rock Island railway delivered the car to the connecting carrier, the Union Pacific, at Colby Junction. The destination of the corn was Shady Bend, on the Union Pacific. The car arrived at Shady Bend on May 7, and on the same day Bennett paid the draft at Topeka, and took up the bill of lading. He afterwards refused to accept the corn, claiming that by reason of the leaky condition of the roof of the car, the corn became wet and was rotten. In the shipment Rule consigned the car to himself with directions to "notify Bennett." Attached to the bill of lading was a customer's draft which was sent to a bank for collection. The trial court held that, the title not having passed to Bennett until he paid the draft, he could not maintain an action for damages to the corn occurring in transit. The judgment was affirmed. (*Bennett v. Railway Co.*, 106 Kan. 95, 186 Pac. 1005.)

A rehearing was granted on the representation that the court had overlooked appellant's sole contention in the appeal and the question decided by the trial court, which it is claimed was not whether the title to the corn had passed to Bennett, but whether Bennett was the "real party in interest." In appellant's original reply brief it was stated that:

"The question ruled on by the court below was whether, under the written communications introduced in evidence, Bennett, the plaintiff, was the owner of this corn at Clayton, Kansas, when delivered to the railway company by Rule under Bennett's directions."

It is now insisted that "the question the trial court decided and [which was] appealed from was, that Bennett *never purchased* this corn and therefore was not the real party in interest."

As a matter of fact, the expression, "real party in interest" was not mentioned in the memorandum opinion of the trial court; that question was not argued in appellant's original brief, nor referred to at the oral argument. Except as it appeared in certain quotations from decisions of other courts, the expression "real party in interest" was not mentioned in the brief of the appellees on the first hearing. Moreover, the trial court did not decide that "Bennett never purchased" the corn, but merely that no title passed to him until he paid the draft. In the memorandum opinion the trial court said:

"According to the findings of the jury the damage which is the basis of this action occurred in transit between Clayton and Shady Bend, and before Bennett took up the draft and came into possession of the bill of lading."

Of course, if Bennett had no title to the corn when the damage was sustained, he was not the real party in interest; and to say that he was not the real party in interest is only another way of stating the fact that he could not recover because he had no title.

The bill of lading contained what is known as, a "shipper's order" clause, and the transaction was one of a class which occurs thousands of times every day in the business world. The meaning of a bill of lading with a "shipper's order" clause, or, as it is sometimes termed, an "order notify" clause, is well established. (See cases cited in original opinion.)

Appellant now insists that the indorsement of the bill of lading assigned to Bennett all the rights the consignor had in

the original contract of shipment, which would be true if Bennett had been the consignee, because in such a case delivery by the consignor to the carrier makes the carrier the agent of the consignee.

In the memorandum opinion the trial court said that—

"Rule's intention is plainly evidenced by his actions. He consigned the car to himself under circumstances which made it impossible for Bennett to get the car until he paid the draft."

It may be well to state again a few general principles which govern the right to maintain an action against the carrier for loss or damage to goods in transit. Where the goods are shipped on an "open" bill of lading, delivered to the consignee, the carrier becomes liable to the consignee for any loss in transit. (*Buggy Corporation v. Railroad,* 152 N. C. 119.) *Prima facie* the consignee is entitled to the possession of the consigned goods, and may sustain an action for damages in transit. (*Chandler & Others v. Sprague,* 5 Metc. [Mass.] 306.) This follows necessarily from the well-settled rule that where goods are shipped to a consignee, the carrier becomes the agent of the consignee. In other words, delivery to the carrier is a delivery to the consignee.

It frequently happens that the right to maintain such an action is concurrent in consignor and consignee, a judgment in one suit being a bar to any other suit for the same loss. Moreover, anyone having a special interest in the goods or the shipment may maintain the action. In *Railway Co. v. Implement Co.,* 73 Kan. 295, 85 Pac. 408 (reported with notes in 6 L. R. A., n. s., 1058), we held that where property had been consigned by the general owner to an agent who had a special interest therein, as factor or commission agent, such consignee might maintain an action in his own name against the carrier to recover damages on account of the loss of commissions occasioned by negligent delay in transit of the goods. In the opinion it was stated that judgment in favor of the plaintiff could work no harm, as it would be a bar to an action for the same injury by the other party. The following statement of the law was quoted with approval:

"Consignee of the goods has the right to sue for their loss by the carrier, notwithstanding another party may be the owner of it. The obligation is to deliver to him. Generally the property vests in him by the mere delivery to the carrier." [*Southern Express Company v. Armstead,* 50 Ala. 350.] (p. 300.)

Again, where the consignor releases all claim to goods lost in transit, the consignee is the proper party to sue for the loss. (*Ela v. American Merchants' Union Express Company*, 29 Wis. 611.)

In this case, the trial court found, and the undisputed facts show, that the same person was both consignor and consignee, and the universal rule is that if the vendor reserves title to the goods, the vendee is at no risk until the goods are actually delivered to him; and so in such a case the right to maintain an action for injury to the goods during transit rests alone with the vendor, who is the only party incurring a risk. (*The Madison, &c., Railroad Co. v. Whitesel*, 11 Ind. 55.) And that is the situation where the seller ships with draft attached to the bill of lading, the goods not to be delivered until payment of the draft. (*Cudahy Packing Co. v. Dorsey*, 26 Tex., Civ. App. 484; and cases cited in original opinion.)

A very pertinent inquiry is: Upon whom would the loss have fallen if the car of corn had been by an act of God destroyed while in transit? Beyond any question, upon Rule, who, as the trial court found, took good care to see that he retained absolute title until Bennett paid the draft and took up the bill of lading. Bennett had no general or special interest in the property and incurred no risk in its transportation. The same test was applied in a case cited in the former opinion (*St. Louis & S. F. R. Co. v. Allen*, 31 Okla. 248, reported with a note in 39 L. R. A., n. s., 309), where a car of coal was shipped under a "shipper's order" bill of lading, the purchaser paying the draft and taking up the bill of lading after the car had arrived at the place of destination. There was a shortage of several thousand pounds in the coal, and the purchaser sued the railroad company and recovered judgment, which on appeal was reversed, because the loss occurred before the draft was paid and the bill of lading obtained by the purchaser. The case was decided solely on the proposition that the purchaser could not recover for the loss of property to which he had no title when the loss occurred. In the opinion it was said:

"Had this car of coal, between Henryetta and Peckham, been destroyed on account of some act of God . . . upon whom would the loss have then fallen, under the facts as shown by this record—the consignor, the Wise-Moist Coal Company, or the defendant in error? Clearly upon the coal company, for the title was in them, and did not vest in the defend-

ant in error until the payment of the draft with bill of lading attached."
(p. 252.)

It was further said in the opinion:

"The defendant in error has not attempted to bring this action as an
assignee of the Wise-Moist Coal Company, but on the theory that he was
the owner of the coal alleged to have been lost on account of the negli-
gence of the plaintiff in error at the time of such loss.

"Under this record it was the duty of the Wise-Moist Coal Company
to deliver that coal to the defendant in error. The railway company was
its agent in making the delivery, and the defendant in error could have
maintained an action against the coal company for this loss, or the coal
company could have assigned this claim to the defendant in error, and he
could have prosecuted the action, as assignee, against the carrier for
such damages." (p. 253.)

In the case of *McNeely & Co. v. Lake Shore & M. S. Ry. Co.*
([Ind.] 115 N. E. 954, decided in 1917) the Studebaker cor-
poration consigned a carload of automobiles to itself, "shipper's
order," "notify McNeely & Co." The bill of lading duly signed
by the Studebaker corporation was attached to a draft drawn
on McNeely, and sent to the bank. The opinion followed and
approved the Oklahoma case (*supra*). The damages claimed
were for delay in shipment. It was said in the opinion:

"Appellant contends that it was and is the real party in interest, and
that by paying the draft and obtaining the bill of lading, as above shown,
it has the unquestionable right to maintain this suit for damages result-
ing from the unreasonable delay in shipment as alleged.

.    .    .    .    .    .    .    .    .    .    .    .

"Appellee contended that the evidence shows that appellant was neither
the holder of the bill of lading nor the owner of the two automobiles,
when the alleged delay in shipment occurred; that without proof of one
or the other of such facts there can be no recovery; that there is no evi-
dence tending to prove either of such facts, but, on the other hand, the
undisputed evidence shows that the bill of lading was made to the order
of the Studebaker Company, with draft attached; and that the draft
was not paid and the bill of lading obtained by appellant until the day
the automobiles arrived in Evansville." (p. 954.)

In affirming the ruling of the trial court directing a judg-
ment for the railway company, the court said:

"Where a bill of lading is made out to the order of the consignor, or
of a third party, with directions thereon to notify a certain person,
and a draft against such person for the purchase price of the goods so
shipped is attached to such bill of lading and transmitted to the destina-
tion of such shipment through a bank, or otherwise, title to the prop-

erty described in the bill of lading does not pass to the person to be so notified until the draft is paid." [Citing numerous cases.] (p. 955.)

In another case the Carnegie Steel Company consigned a car of iron from itself at Pittsburg to itself at Ashboro, N. C. "Shipper's order notify" the Ashboro Wheelbarrow and Mfg. Co., with bill of lading indorsed to the plaintiff company, with sight draft attached and sent to a bank for collection. The plaintiff paid the draft and took up the bill of lading January 17, 1907, the day after the shipment reached destination, and in a suit against the railway company recovered judgment for damages by delay, which was reversed because the title to the property had not vested in the plaintiff at the time the delay occurred. In the opinion the court said:

"When the goods are shipped by bill of lading deliverable to the order of the vendor, in the absence of any evidence to the contrary, it is almost decisive to show his intention to reserve the *jus disponendi* and to prevent the property passing to the vendee. Benja. on Sales (17th ed.) 372, where the decided cases are cited and commented upon at length. *Dows v. Nat. Bank*, 91 U. S. 618, 23 L. Ed. 214. In *Bank v. Logan*, 74 N. Y. 568, Folger, J., discusses the question and reviews the decided cases. In *Bank v. Crocker*, 111 Mass. 163, Ames, J., says: 'A carrier may be a mere bailee for the consignor; and when, by the terms of the bill of lading, the goods are to be delivered to the consignor's order, the carrier is his agent and not the consignee's. . . . In a contract of sale the fact of making the bill of lading deliverable to the order of the vendor, when not rebutted by evidence to the contrary, is decisive to show his intention to preserve the *jus disponendi* and to prevent the property from passing to the vendee.'

" 'By such a bill of lading the seller does not reserve merely a lien, but the absolute right of disposal of the goods.' 6 Am. & Eng. Enc. 1066, note 1. Until the draft is paid, the contract between the consignor and consignee is executory; that is, the consignor agrees to ship and place in the hands of the carrier the goods at the place designated, to be sold and delivered to the consignee when the draft is paid, both the title and possession remaining in the consignor until that time. If, in such case, the goods were injured or destroyed, the loss falls upon the consignor. If they are delayed in the carriage, the carrier is liable to the consignor. It is the fault of his agent. If the contract of the consignor imposed upon him the obligation to deliver the goods at any specified time, or in a reasonable time, and they are delayed by his agent, the consignee may recover of the consignor such damages as he may sustain as were in the contemplation of the parties. The only evidence in this case was that the goods were shipped to consignor's order—'notify' plaintiff. The authorities appear to be uniform that in such case the consignee is not brought into any contract relation with the carrier and must look to the

consignor for any damage sustained by a delay, who, in turn, must look to the carrier." (*Manufacturing Co. v. R. R. Co.*, 149 N. C. 261, 262.)

In a case where a car of apples shipped by the vendor in good order but frozen on the road, the vendor taking a bill of lading with sight draft attached, it was held that as the vendor retained title the loss must be borne by him. The ground of the decision was well stated in the following language:

"By the established rules of commercial law, where goods are shipped at the risk of the purchaser and by his order, or if by other evidence the intention of the shipper is made apparent to part with his title, the carrier is held to be the agent of the consignee, and not the agent of the consignor. But if the seller does not intend to part with his title to and control over the property when he makes the consignment, the authorities regard the carrier as the consignor's agent and not the consignee's. (*Willman M. Co. v. Fussy*, 15 Mont. 511, 513.)

(See, also, *Seeligson v. Philbrick* [C. C.], 30 Fed. 600; *Jones & Co. v. Brewer*, 79 Ala. 545; *Perkins v. Eckert*, 55 Cal. 400; *Forcheimer & Co. v. Stewart*, 65 Iowa, 593; *Reed v. Racine Boat Co.*, 156 Iowa, 12.)

Corpus Juris states the rule which applies to the case at bar, in these words:

"One who is mentioned in the bill of lading as the party to be notified on arrival of the goods has no such interest as will authorize him to maintain an action for loss of the goods shipped, in the absence of any evidence that he was either shipper or consignee." (10 C. J. § 527, title "Carriers.")

Bennett's situation in respect of damages to the corn in transit was no different from what it would have been if on the day he paid the draft and received the bill of lading he had purchased any other property by a bill of sale and discovered that before it became his property it had been damaged by the fault or neglect of a third party. It is clear he would have no cause of action against the party at fault, because it is the law that where property is injured or destroyed "the loss falls upon the holder of the legal title." (*Grant v. United States*, 7 Wall. 331.)

Rule had a cause of action against the carrier, and if Bennett had procured an assignment of Rule's cause of action, a different question would be presented. But there was no assignment of Rule's cause of action; and plaintiff's action was not brought, nor was it prosecuted, upon the theory of

Bank v. Amend.

such an assignment. In the trial court Bennett's claim was that the title to the corn passed to him at Clayton, when Rule delivered the corn to the carrier. On this rehearing the theory is advanced that Rule's blank indorsement of the bill of lading and the payment of the draft by Bennett transferred to Bennett the cause of action for the loss that occurred in transit. The mere blank indorsement by Rule of the shipper's order bill of lading, which in the original opinion was said to have been for the purpose of facilitating the collection of the draft through the banks, was not an assignment of his cause of action for damages.

There being no assignment of Rule's claim for damages, the provision of the code permitting the assignee of a cause of action to sue in his own name, has nothing upon which to operate in this case. Nor does the code provision authorizing an action to be prosecuted in the name of the real party in interest affect Bennett's rights, because the title to the property was still in Rule when the damages were sustained. Bennett had no interest in the claim, and Rule was the real party in interest.

The former judgment is adhered to.