No. 23,446.

THE PETTIT GRAIN COMPANY, *Appellee,* v. JOHN BARTON PAYNE, as Agent, etc., and THE CHICAGO, ROCK ISLAND & PACIFIC RAIL-WAY COMPANY, *Appellants.*

SYLLABUS BY THE COURT.

1. CARRIERS—*Wheat Lost in Transportation—Liability of Carrier—Evidence.* The evidence considered, and held sufficient to sustain a judgment holding a carrier liable for failure to deliver at destination wheat which it received for transportation.

2. SAME—*No Error in Reception and Consideration of Evidence.* Assignments of error relating to reception and consideration of evidence examined, and held not to be of such gravity as to compel a reversal of the judgment.

3. NEGLIGENCE—*Plaintiff "Real Party in Interest."* The case of *Bennett v. Railway Co.,* 106 Kan. 95, 186 Pac. 1005, distinguished.

4. SAME—*Railroad Company Under Control of Director-general—Railroad Company Not Liable.* The railroad company relieved from liability for loss occasioned by operation of its road while under control of the director-general.

Appeal from Reno district court; FRANK F. PRIGG, judge. Opinion filed January 7, 1922. Modified and affirmed.

*Luther Burns, J. E. DuMars,* both of Topeka, and *F. L. Martin,* of Hutchinson, for the appellants.

*A. C. Malloy, R. C. Davis,* and *Warren H. White,* all of Hutchinson, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover the value of grain lost in course of transportation. The plaintiff recovered, and the defendants appeal.

When the cause of action arose, the railroad of the defendant, the Chicago, Rock Island and Pacific Railway Company, was under control of the defendant, the director-general of railroads. For convenience, the action will be treated as one against the Rock Island Company, which will be spoken of as the defendant. The plaintiff is a grain dealer, and has an elevator in Hutchinson, adjacent to one of the Atchison, Topeka & Santa Fe Railway Company's tracks. The Consolidated Flour Mills Company is a buyer of grain, having an office in Hutchinson, and a mill in Caldwell operated under the name, The Border Queen Milling Company. The defendant has a line of railroad between Hutchinson and Caldwell.

The plaintiff sold to the Consolidated Company a car of wheat, to be shipped to the Border Queen Company and settled for according to destination weight. Pursuant to contract, the plaintiff

Grain Co. v. Railway Co.

loaded 84,600 pounds of wheat in a B. & O. car set at its elevator, obtained the signature of the defendant's agent to a bill of lading, and settled with the Consolidated Company at its Hutchinson office according to grain-trade custom. The car was loaded on August 28. Before the car reached the defendant's track it was damaged, and on September 24 it was returned to the elevator in a leaking condition. The wheat was weighed out of the car into an empty bin, one of the defendant's cars was set at the elevator, and the wheat in the bin was weighed into the car. These weights were 81,600 pounds, and disclosed a shortage of 3,000 pounds. This shortage was proved by a state weighmaster, who did all the weighing at the plaintiff's elevator, and formed an item of the plaintiff's claim. The defendant says it did not receive the B. & O. car. The defendant and the Santa Fe Company had a switching arrangement governing the handling of cars in Hutchinson. The Santa Fe transferred all cars for certain industries, and the defendant transferred all cars for other industries. In this instance, the B. & O. car was handled by the Santa Fe for the defendant. The director-general was operating both railway systems, and was liable for the shortage in any event.

The defendant transported the Rock Island car to its destination. When the car was unloaded at Caldwell, the wheat it contained weighed but 62,420 pounds, a shortage of 19,180 pounds. The defendant accepted this weight as the basis for computing freight charges, which were paid accordingly. What became of 319 bushels and 40 pounds of wheat, worth at the time $2.17 per bushel? The defendant produced evidence, which need not be recited in detail, showing it was impossible for the wheat to escape between the elevator at Hutchinson and the mill at Caldwell, and the defendant concludes that not more than 62,420 pounds of wheat were placed in the Rock Island car. As stated above, weight of the wheat placed in the car was proved by the weighmaster who loaded the car. Whom was the trial court to believe?

The plaintiff directs attention to a bit of evidence which satisfactorily solves the question of fact. The defendant made the following entry on its freight bill, which was introduced in evidence:

Hutchinson Wts.

122000

40500

81500

BQ Wts.    62420

The figures 122,000 represent the weight of the loaded car at Hutchinson. The figures 40,500 represent the stenciled weight of the car. The figures 81,500 represent the weight of the wheat, derived by subtracting the weight of the car from the gross weight. The letters and figures, BQ Wts. 62,420, represent the destination weight of the wheat as ascertained by the Border Queen Milling Company. The defendant does not dispute these interpretations, and the necessary conclusion is, the defendant, or the Santa Fe for it, weighed the car of wheat at Hutchinson. The weight of the wheat thus ascertained, 81,500 pounds, is only 100 pounds different from the weight given by the weighmaster who loaded the car.

At Caldwell the wheat was weighed in hopper scales, and weights were certified as follows:

Hopper drafts.
19240
18880
18890
5410
———
Total   62420

The shortage in the shipment, 19,180 pounds, just about equals one average hopper draft, and there was room for inference that one hopper draft did not get into the certification of weights. Every one connected with opening and unloading the car and weighing the wheat at Caldwell, testified. The testimony was positive, and without conflict, that when the car was opened the grain was far below the wheat line at all points, and was high in the center and low at the ends, indicating original light loading; and the defendant now stands on the proposition that there were not substantially 81,600 pounds of wheat in the car when it was sealed at Hutchinson. The freight bill, harmonizing as it did with the state weighmaster's weights, was a virtual admission the car was loaded as the plaintiff contends and, if the car contained but 62,400 pounds of wheat when the seals were broken, the defendant must account for the shortage.

The defendant complains of the reception and consideration of evidence. The Consolidated Company sued the plaintiff for the difference between the sum advanced on the bill of lading and the price of the quantity of wheat delivered, and recovered judgment. At the trial of the present action, the plaintiff, over objection, read in evidence testimony given in the former suit by witnesses Vance,

Grain Co. v. Railway Co.

Charter, and Wiley. Charter and Wiley were produced and examined as witnesses by the defendant, and Vance's testimony related to matters about which there was no dispute. Therefore, the defendant was not prejudiced. When the trial was concluded, the court took the cause under advisement, and the parties submitted briefs. The journal entry of judgment contains the following:

"The court further finds that the evidence offered at the trial of this cause, to the effect that the consignee of the shipment of grain involved in this suit had sued and recovered from the plaintiff, should have been admitted as a part of the plaintiff's evidence in this cause; and that, inasmuch as said judgment in favor of said consignee and against the plaintiff in this cause was obtained in this court, the said evidence should be treated as introduced as a part of the evidence of the plaintiff."

It will be observed the evidence treated as introduced did not include evidence justifying the former judgment, but merely included evidence establishing the fact that the former judgment was rendered. The defendant complains that the trial court must have treated the fact that judgment was rendered against the plaintiff as some proof the defendant was responsible for loss of the wheat. The director-general pleaded that the plaintiff received full value of all the wheat from the Consolidated Company, which was substantially true. In order to remove this seeming bar to recovery, the plaintiff offered proof of the former judgment, and the evidence should have been admitted. The judgment was matter of record in the same court, was conclusive, and it was not irregular for the court, in final consideration of the case, to treat it as introduced. In any event, this court cannot presume the district court committed so grave an error as to consider the judgment in deciding the main issue.

The defendant contends the plaintiff is not the real party in interest. The defendant does not dispute that a consignor may sue the carrier with whom he contracted, for grain lost in transit, although the consignee may have taken up the bill of lading. But it is said the case of *Bennett v. Railway Co.*, 106 Kan. 95, 186 Pac. 1005, and 107 Kan. 17, 190 Pac. 757, is controlling. In that case the shipment was made to the consignor's order, and the suit was brought by a purchaser of the goods who acquired title after they had been damaged.

It is said judgment should not have been rendered against the Rock Island Company. Since the Rock Island Company had no

control over operation of its railroad, the judgment should have been against the director-general only.

The judgment of the district court is modified by eliminating the Rock Island Company. As modified, the judgment is affirmed.